## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nova Design Technologies, Ltd. | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO.** |
| | : | |
| Matthew K. Walters | : | |
| and | : | |
| Dale E. Walters | : | |
| and | : | |
| Brian Guerra | : | |
| and | : | |
| Respironics, Inc. | : | |
| and | : | |
| RCI Investments, LLC, | : | |
| and | : | |
| Philips Holding  U.S.A., Inc. | : | |
| and | : | |
| Respironics Novametrix, LLC | : | |
| and | : | |
| Children's Medical Ventures, LLC | : | |

## ENTRY OF APPEARANCE

TO THE CLERK OF COURT:

   Kindly enter my appearance as counsel on behalf of plaintiff, Nova Design

Technologies, Ltd., in  the above-captioned matter.


        DUGAN, BRINKMANN, MAGINNIS & PACE


       By: _____
          Eugene J. Maginnis, Jr., Esquire

Date: _12.30.10_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOVA DESIGN TECHNOLOGIES, LTD. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION NO. 10-_____ |
| v. | ) | |
| | ) | |
| MATTHEW K. WALTERS | ) | |
| DALE E. WALTERS | ) | Honorable Judge _____ |
| BRIAN GUERRA | ) | |
| | ) | |
| RESPIRONICS, INC. | ) | |
| RCI INVESTMENTS, LLC | ) | |
| | ) | **JURY DEMAND** |
| and, | ) | |
| | ) | |
| PHILIPS HOLDING U.S.A., INC. | ) | |
| RESPIRONICS NOVAMETRIX, LLC | ) | |
| CHILDREN'S MEDICAL VENTURES, LLC.) | | |
| | ) | |
| Defendants | ) | |

---

## COMPLAINT

---

### Nature of Action

1.     This is an action for: a) breach of contract, b) fraudulent or negligent misrepresentation, c) fraudulent concealment or nondisclosure, d) conversion, e) trade secret misappropriation, f) correction of inventorship, g) patent infringement, h) unjust enrichment, and i) violation of the Sherman Act.

### Parties

2.     Plaintiff, Nova Design Technologies, Ltd. ("NOVA DESIGN") is a Pennsylvania sub-chapter S corporation having a principal place of business at 37 North Valley Rd, Paoli, Pennsylvania 19301-1320.

3.     Defendant, Matthew K. Walters ("MATT WALTERS") is an individual residing at 2128 Bella Terra Blvd, Estero, FL 33928-7309, and on information and belief was an owner and officer of his family's now administratively dissolved Missouri

corporation formerly known as Omni Therm, Inc. ("'OMNI THERM") having a place of business at 2338 Weldon Parkway, St. Louis, Missouri 63146, and on information and belief, a place of business at 1010 Murry Ridge Lane, Murrysville, Pennsylvania 15668.

4.    Defendant, Dale E. Walters ("DALE WALTERS") is an individual residing at 14860 Carducci Ct., Bonita Springs, FL 34135-8287, and on information and belief was an owner and officer of OMNI THERM and is MATT WALTERS' father.

5.    Defendant, Brian Guerra ("GUERRA") is an individual residing at 8 Aldesan Ct., Saint Peters, MO 63376-2327 and is a former employee of OMNI THERM, who is continuing to do business as OMNI THERM at a place of business at 2338 Weldon Parkway, St. Louis, Missouri 63146.

6.    Defendant, Respironics, Inc. ("RESPIRONICS") is a Delaware corporation having a principal place of business at 1010 Murry Ridge Lane, Murrysville, PA 15668, and on information and belief has sold infant heel warmers that infringe one or more NOVA DESIGN patents, has purchased the assets of OMNI THERM and is currently doing business as OMNI THERM at 1010 Murry Ridge Lane, Murrysville, PA.

7.    Defendant, RCI Investments, LLC ("RCI INVEESTMENTS") is a Delaware Limited Liability Corporation having a place of business at 801 West Street, Wilmington, Delaware 19801.

8.    Defendant, Philips Holding U.S.A., Inc. ("PHILIPS") is a New York corporation having a place of business at 3000 Minuteman Road, Andover. MA 01810.

9.    Defendant, Respironics Novametrix, LLC ("RESPIRONICS NOVAMETRIX") is a Delaware Limited Liability Corporation, that on information and belief was recently acquired by and is a wholly owned subsidiary of PHILIPS, and has a principal place of business at 5 Technology Drive, Wallingford, Connecticut 066492.

10.    Defendant, Children's Medical Ventures, LLC (CHILDREN'S MEDICAL VENTURES) is a Massachusetts Limited Liability Corporation, and on information and belief is a wholly owned subsidiary of RESPIRONICS NOVAMETRIX, and has places of business at 275 Longwater Drive, Norwell, MA 02061 and Monroeville, PA, and has sold and continues to sell infant heel warmers that infringe one or more NOVA DESIGN patents.

- 2 -

## Jurisdiction and Venue

11.     Subject matter jurisdiction over this Complaint is expressly conferred on this Court under 28 U.S.C. §§1331, 1332 and 1338.  With respect to §1332, the amount in controversy is believed to exceed $75,000 exclusive of interest and costs.

12.     Personal jurisdiction is conferred upon this Court in that Defendants reside in or have come to the State of Pennsylvania and this District to discuss the subject technology and negotiate and execute the subject agreement with NOVA DESIGN, have engaged in acts that breached the agreement with NOVA DESIGN within the State of Pennsylvania and this District, have made and sold, continue to make and sell, or have contributed to the production of product or induced others to make and sell products, including infant heel warmers that infringe one or more NOVA DESIGN patents within the State of Pennsylvania and this District, and/or have engaged in acts of fraudulent or negligent misrepresentations, fraudulent concealment or nondisclosure, conversion, trade secret misappropriation, unfair competition and violations of the Sherman Act within the State of Pennsylvania and this District.

13.     Venue is proper under 28 U.S.C. §1391 and 1400(b).  At all times material, the Defendants have been conducting business within the State of Pennsylvania and this District and the claims of breach of contract, fraudulent or negligent misrepresentation, fraudulent concealment or nondisclosure, conversion, trade secret misappropriation, patent infringement, contributing to or inducing patent infringement, unfair competition and violations of the Sherman Act arose within the State of Pennsylvania and this District.

## Background

14.     NOVA DESIGN was formed in 1990 and employs Dr. Andrew Milligan and Jaime Schlorff.  Dr. Milligan received a Bachelor of Science in Chemical Engineering in 1973, a Masters of Science in Electrical Engineering in 1975 and a Doctorate in Electrical Engineering in 1978, all from Villanova University.  Ms. Schlorff received a Bachelor of Science in Chemical Engineering in 1990 from Villanova University, and has been an employee of NOVA DESIGN since receiving her degree.

15.    NOVA DESIGN is engaged in a wide variety of businesses, including the development, manufacture and sale of various flexible heat packs to therapeutically warm the human body ("NOVA Heat Packs"). NOVA DESIGN has been selling NOVA Heat Packs since about 1993 and these products include DELTACARE heat packs, HOT-N-HANDY heat packs and heat packs formerly sold under a THERMICARE mark.

16.    OMNI THERM is or was a family run company located in Saint Louis, Missouri. The company was incorporated in 1987 and administratively dissolved in 2007. On information and belief, DALE WALTERS founded the company and served as its president until his son MATT WALTERS became president sometime prior to October 1998. On information and belief, DALE WALTERS was an owner and officer of OMNI THERM from about 1987 until at least 2007, and MATT WALTERS was an owner and officer of OMNI THERM from at least October 1998 until at least 2007.

17.    Previous heat pack triggers used a metal disc that was flexed to initiate or trigger crystallization. Unfortunately, these metal discs had edges that inadvertently activated crystallization when the heat pack was accidentally dropped. The metal strips also created a hot spot that melted the bag when it was reheated in a microwave oven. On information and belief, OMNI THERM sold a heat pack with a serrated metal plate glued to one side of the bag and a sodium-acetate-impregnated piece of cardboard glued to the opposite side. Crystallization was initiated by squeezing the two sides together. A major drawback of this design is that the serrated metal plate would pierce a small hole in the bag which would invariable cause a small leak.

18.    DALE WALTERS obtained U.S. Patent Numbers 5,305,733 and 5,662,096 both entitled "Trigger to Activate Supercooled Aqueous Salt Solution for use in a Heat Pack". These patents issued in 1994 and 1997. U.S. Patent and Trademark Office ("Patent Office") records show that DALE WALTERS assigned these patents to OMNI THERM. These patents disclose triggers that pierce the bag containing the salt solution to initiate crystallization. The bag puncturing mechanism is made of metal. Patent Office records state the Kalish & Gilster law firm prepared and prosecuted these patents.

## NOVA DESIGN's New Trigger and Heat Pack Design

19.    In 1992, NOVA DESIGN developed a trigger for a heat pack that constituted a significant advancement over previous heat pack designs. The NOVA DESIGN trigger includes a mass of rigid ceramic objects held in close proximity. When the ceramic objects are squeezed between one's fingers, or rubbed together, etc., they contact and press against each other to trigger crystallization as disclosed in U.S. Patent No. 5,275,156 (the '156 Patent). The '156 Patent issued on January 4, 1994. (**Exhibit A**). The ceramic objects have no sharp edges to puncture the plastic bag, are not prone to inadvertently trigger crystallization when the heat pack is dropped, and do not create a hot spot that can melt the bag when reheated in a microwave oven. At a microscopic level, the ceramic surfaces are rough, and have many peaks and valleys. In fact, ceramics such as aluminum oxide are widely used as the abrasive material or grit in sand paper. When two ceramic surfaces are compressed, squeezed or rubbed together, only a small portion of the surfaces actually engage. The peaks of the opposed surfaces engage to form small areas of concentrated high pressure, which are believed to seed or trigger the crystallization process in a heat pack.

20.    NOVA DESIGN has continuously sold the NOVA Heat Packs in accordance with the '156 Patent since about 1997. These products include its DELTAPAK heat pack for placing against a portion of the human body to increase blood flow, muscle relaxation and other medicinal purposes. NOVA DESIGN also sells seat warmer heat packs for use at outdoor sporting events. These NOVA Heat Packs include a flexible plastic bag containing a supercooled aqueous salt solution such as sodium acetate. A trigger is placed inside the bag in direct contact with the solution to selectively initiate the crystallization of that solution. Crystallization causes the solution to give off its latent heat at a known phase change transition temperature. For aqueous sodium acetate solutions this temperature is between about 100 °F and 130 °F depending on the specific composition or concentration of the saline solution in the heat pack. A wider range of transition temperatures can be achieved using different types of solutions. NOVA Heat Packs can be discarded after a single use, or reused by melting the crystallized solution via a microwave oven or submersion in heated water.

21.    In 1995, through her employment with NOVA DESIGN, Jaime Schlorff discovered that a piece of aluminum oxide sandpaper was an effective trigger to initiate the crystallization of a wide variety of salt solutions in heat packs, including the sodium acetate solutions in NOVA Heat Packs.  Over the course of several years, Jaime Schlorff researched, tested and developed sandpaper trigger and sodium acetate technology for heat packs ("NOVA's Confidential Information"). For example, Ms. Schlorff reached and tested multiple non-metallic trigger materials, including multiple non-metallic abrasive materials, and tested multiple grit sizes to effectively initiate crystallization while resisting preactivation.  She also tested various backing materials, including "waterproof" and cloth backed sandpapers, as well as various adhesives such as hot melt adhesive and adhesive coating thicknesses to effectively trigger crystallization.  She also tested single layer and multiple layer sandpaper configurations, sizes and geometries to resist preactivation, and various methods of manipulating the sandpaper trigger to effectively initiate crystallization, such as bending, flexing squeezing the sandpaper.  Ms. Schlorff also tested the sandpaper triggers on different types of phase change solutions, including different aqueous sodium acetate solution concentrations (e.g., tetrahydrate, pentahydrate, hexahyrate, etc.). The NOVA DESIGN began selling Heat Packs with an aluminum oxide sandpaper triggers in 2002.  NOVA DESIGN owns the patent rights to NOVA's Confidential Information.

## 1998 Confidential Disclosure Agreement Between NOVA DESIGN and OMNI THERM and Its Officers

22.    On September 30, 1998, Jaime Schlorff called OMNI THERM and spoke with DALE and MATT WALTERS to determine if OMNI THERM was interested in a new heat pack with a non-metallic trigger to initiate the crystallization of a saline solution.  MATT WALTERS said OMNI THERM sold many heat packs annually and he was "definitely interested."  MATT WALTERS agreed that Ms. Schlorff should send him a Confidential Disclosure Agreement so he could evaluate the commercial feasibility of NOVA DESIGN's new heat pack and non-metallic trigger, including the use of the new non-metallic trigger in OMNI THERM's heat packs.  Jaime Schlorff said NOVA

DESIGN could supply the new non-metallic triggers to OMNI THERM, or license the technology to OMNI THERM so it could make the non-metallic triggers itself.

23.    On October 13, 1998, NOVA DESIGN and OMNI THERM entered a Confidential Disclosure Agreement ("Confidentiality Agreement," **Exhibit B**). MATT WALTERS signed the Confidentiality Agreement. The Confidentiality Agreement states that NOVA DESIGN has certain confidential information including inventions, trade secrets, know-how and ideas relating to Heat Storage Devices, and that the purpose of the Agreement is to allow OMNI THERM to evaluate NOVA DESIGN's confidential information. Paragraphs 2, 4, 5 and 8 of the Agreement states as follows:

2.    Omni Therm, Inc. agrees to maintain such Nova's information in confidence, **and not to use that information for any purpose other than to evaluate said information**. Disclosure or other use of Nova's information must first be authorized in writing by Nova.

4.    Omni Therm, Inc. for a period of **three (3) years** after disclosure of the Nova Confidential Information or until the **issuance of a patent to Nova** containing such information, which ever occurs first, shall exercise all reasonable efforts to prevent third parties from gaining access to the confidential information disclosed by Nova.

5.    **Omni Therm, Inc. shall obtain no rights of any kind** in the confidential information of Nova by reason of this Agreement.

8.    This Agreement shall be construed and the legal relations between the parties shall be determined in accordance with the laws of the **Commonwealth of Pennsylvania** as if this Agreement were fully executed and performed there. (emphasis supplied).

24.    Around the time the parties entered the 1998 Confidentiality Agreement, MATT WALTERS told Ms. Schlorff that OMNI THERM sold infant heel warmers to RESPIRONICS and/or CHILDREN'S MEDICAL VENTURES.

## OMNI THERM's and Its Officer's Evaluation of NOVA DESIGN's Heat Pack And Sandpaper Triggers Under Terms of 1998 Confidentiality Agreement

25.    On November 12, 1998, MATT WALTERS advised Jaime Schlorff of OMNI THERM's specifications for a non-metallic trigger for its infant heal warmer, and asked her to send NOVA's Confidential Information regarding its new non-metallic triggers.

26.   On November 20, 1998, Ms. Schlorff mailed a letter to MATT WALTERS forwarding NOVA's Confidential Information (**Exhibit C**) including a prototype heat pack with a transparent, flexible pack filled with a salt hydrate solution (aqueous sodium acetate) and containing an aluminum oxide sandpaper trigger floating in the pack, and also including several samples of the more effective aluminum oxide sandpaper triggers to reliably initiate crystallization while resisting preactivation. This letter was sent via regular mail.

27.   On information and belief, MATT or DALE WALTERS and/or OMNI THERM did not receive Ms. Schlorff's November 20, 1998 letter until at least November 23, 1998. MATT WALTERS, DALE WALTERS and/or OMNI THERM did not acknowledge receiving Ms. Schlorff's letter until December 29, 1998. Thus, the earliest disclosure of NOVA's Confidential Information to MATT WALTERS, DALE WALTERS and/or OMNI THERM was between November 23, 1998 and December 29, 1998 ("Earliest Disclosure Date"). Neither NOVA DESIGN or Ms. Schlorff informed MATT WALTERS, DALE WALTERS or OMNI THERM of NOVA's Confidential Information prior to this Earliest Disclosure Date.

28.   On December 29, 1998, MATT WALTERS called Jaime Schlorff and said:

a) He liked NOVA DESIGN's aluminum oxide sandpaper triggers; particularly because they are not prone to inadvertently activating crystallization;

b) He wanted to buy the triggers from NOVA DESIGN, and was ready to buy 1,000,000 triggers right now at the right price; and,

c) Asserted a very minimal price for OMNI THERM's current triggers.

29.   On February 17, 1999, Jaime Schlorff sent MATT WALTERS a letter quoting an amount for NOVA DESIGN's sandpaper triggers that was significantly above what MATT WALTERS asserted was OMNI THERM's current minimal cost for its triggers.

30.   On February 23, 1999, MATT WALTERS told Jaime Schlorff that NOVA DESIGN's quote was too high, and stated an upper limit OMNI THERM would pay for NOVA DESIGN's new sandpaper triggers.

31.    On February 24, 1999, Jaime Schlorff advised MATT WALTERS that NOVA DESIGN could supply him with its new sandpaper triggers for an amount above what MATT WALTERS said was his upper cost limit.

32.    MATT WALTERS did not respond for over one and half (1-1/2) years.

33.    On September 22, 2000, MATT WALTERS called Jaime Schlorff to revisit the possibility of using NOVA DESIGN's new sandpaper triggers in his company's infant heel warmers.

34.    On September 29, 2000, Jaime Schlorff sent MATT WALTERS a letter explaining NOVA DESIGN's improved manufacturing position, and providing a quote below what he said was his upper limit for NOVA DESIGN's new sandpaper triggers.

35.    On October 5, 2000, BRIAN GUERRA, an employee of OMNI THERM, told Jaime Schlorff that OMNI THERM wanted to license NOVA DESIGN's Confidential Information on an exclusive basis for the infant heel warmer market.

36.    On October 16, 2000, Jaime Schlorff sent MATT WALTERS some additional samples of NOVA DESIGN's new sandpaper triggers (additional NOVA Confidential Information) so OMNI THERM could evaluate them.

37.    On October 19, 2000, MATT WALTERS told Jaime Schlorff that he would send a purchase order and check to pay for 20,000 triggers, and that he wanted the triggers to include artwork showing a dolphin or a dinosaur.

38.    On October 27, 2000, BRIAN GUERRA told Jaime Schlorff that OMNI THERM was working on artwork for the triggers; and was having its attorney draw up a three year contract with NOVA DESIGN to buy the NOVA DESIGN sandpaper triggers.

39.    MATT WALTERS came to NOVA DESIGN in Paoli, Pennsylvania and met Dr. Milligan to discuss the terms of a prospective non-metallic trigger agreement.

### WALTERS' and OMNI THERM's Misconduct and Concealment

40.    During the term of the 1998 Confidentiality Agreement, MATT WALTERS, DALE WALTERS and/or OMNI THERM breached the Agreement by improperly disclosing NOVA's Confidential Information to third parties, and filing patent applications in MATT WALTERS' name for NOVA's Confidential Information.

MATT WALTERS, DALE WALTERS and/or OMNI THERM did so without telling NOVA DESIGN and without NOVA DESIGN's written or verbal authorization.

41.     On November 30 and December 12, 2000, MATT WALTERS told Jaime Schlorff that OMNI THERM was having problems using the production (non-prototype) NOVA DESIGN sandpaper triggers with OMNI THERM's form, fill and seal machine, such as getting the triggers to drop into the heat packs. Ms. Schlorff noted she would discuss this problem with NOVA DESIGN's sandpaper trigger production personnel.

42.     Prior to March 16, 2001, MATT WALTERS, DALE WALTERS and/or OMNI THERM retained the Greensfelder, Hemker & Gale, P.C. law firm ("GHG Law Firm") and Attorney Peter Gilster ("Attorney Gilster") to prepare a patent application pertaining to a heat pack with a sandpaper trigger. On information and belief, prior to or during the preparation of this application, MATT or DALE WALTERS disclosed NOVA's Confidential Information to the GHG Law Firm and Attorney Gilster. Contrary to at least Paragraph 2 of the Confidentiality Agreement, this disclosure was for a purpose other than to evaluate NOVA's Confidential Information. Contrary to at least Paragraphs 2 and 4, the disclosure was made without advising NOVA DESIGN and without NOVA DESIGN's written authorization.

43.     On March 16, 2001, the GHG Law Firm and Attorney Gilster filed U.S. Provisional Application No. 60/276,295 entitled "Trigger to Activate Supercooled Aqueous Salt Solution for Use in a Heat Pack" ("the '295 Application," **Exhibit D**). The specification and claims of the '295 Application pertain to a heat pack with a sandpaper trigger to initiate crystallization of a sodium acetate solution. On information and belief, MATT or DALE WALTERS authorized the preparation and filing of the '295 Application in breach of Paragraphs 2, 4 and 5 of the 1998 Confidentiality Agreement. Notwithstanding the clear relevance of NOVA's Confidential Information to the '295 Application, MATT and DALE WALTERS and OMNI THERM failed to advise NOVA DESIGN of the existence of the '295 Application and the disclosure of NOVA's Confidential Information to the GHG law firm and Attorney Gilster. The filing of the '295 Application was for a purpose other than to evaluate NOVA's Confidential Information, and was filed without NOVA DESIGN's written authorization.

44.    The filing papers for the '295 Application fraudulently conceal and do not disclose Jaime Schlorff as the sole inventor, or even a co-inventor.  Instead, the filing papers for the '295 Application improperly list MATT WALTERS as the inventor.

45.    On May 9, 2001, MATT WALTERS spoke with Jaime Schlorff and again told her that OMNI THERM could not get its form, fill and seal machine to feed NOVA's sandpaper triggers properly, and to follow up with BRIAN GUERRA next week.  During this call, MATT WALTERS fraudulently concealed and did not disclose to Jaime Schlorff that he had filed, or cause to be filed, the '295 Application that disclosed and claimed a heat pack with a sandpaper trigger in accordance with NOVA's Confidential Information.  On information and belief, MATT WALTERS' statement also constituted a fraudulent or negligent misrepresentation.

46.    On about May 14, 2001, BRIAN GUERRA told Jaime Schlorff that the sandpaper disks are too big and the vibration mechanism of its machine does not send the sandpaper down and drop into the heat pack bags during the operation.

47.    On information and belief, MATT WALTERS' and BRIAN GUERRA's above November 30, 2000, December 12, 2000, May 9, 2001 and May 14, 2001 statements to Jaime Schlorff, as well as their failure to disclose the existence of the '295 Application, constitute their fraudulent concealment or nondisclosure of their breach of contract, conversion, misappropriation and unjust enrichment regarding NOVA's Confidential Information.  On information and belief, these statements also fraudulently or negligently misrepresented the commercial viability, sales or prospective sales of heat packs incorporating NOVA's Confidential Information.

48.    On information and belief, MATT WALTERS, DALE WALTERS, BRIAN GUERRA and/or OMNI THERM began making heat packs with aluminum oxide sandpaper triggers by about mid 2001 for a purpose other than to evaluate the triggers during the term and in breach of the 1998 Confidentiality Agreement.

49.    On information and belief, MATT WALTERS, DALE WALTERS, BRIAN GUERRA and/or OMNI THERM began making heat packs with aluminum oxide sandpaper triggers for the purpose of selling those heat packs during the term of and in breach of the 1998 Confidentiality Agreement.

- 11 -

50.     On information and belief, MATT WALTERS, DALE WALTERS, BRIAN GUERRA and/or OMNI THERM began making and selling or offering to sell heat packs with aluminum oxide sandpaper triggers during the term and in breach of the 1998 Confidentiality Agreement.

51.     On November 20, 2001, the GHG Law Firm and Attorney Gilster filed U.S. Patent Application No. 09/989,591 entitled "Trigger to Activate Supercooled Aqueous Salt Solution for Use in a Heat Pack" (the "'591 Application," **Exhibit E**).  The specification and claims of this application pertain to a heat pack with a sandpaper trigger to initiate crystallization of a supercooled aqueous salt or sodium acetate solution.  On information and belief, MATT or DALE WALTERS authorized the preparation and filing of the '591 Application in breach of Paragraphs 2, 4 and 5 of the Confidentiality Agreement.  They did so without advising NOVA DESIGN and without NOVA DESIGN's written authorization.

52.     The specification, drawing figures and claims for the '295 and '591 Applications are the same or very similar.

53.     The filing papers for the '591 Application fraudulently conceal and do not disclose Jaime Schlorff as the sole inventor, or even a co-inventor.  Instead, the filing papers for the '591 Application improperly list MATT WALTERS as the inventor.

54.     The filing papers for the '591 Application include a Nonpublication Request Under 35 U.S.C. 122(b)(2)(B)(i) stating "I hereby request that the attached application not be published under 35 U.S.C. 122(b)." (**Exhibit E**).  On information and belief, MATT WALTERS authorized the filing of this Request.  As a result of this Request, the Patent Office did not publish the '591 Application eighteen months from its earliest claimed filing date, September 16, 2002 (i.e., eighteen months from March 16, 2001 filing date of '295 Provisional Application).  This Request delayed publication of the '591 Applications by the Patent Office for an additional two and a half (2-1/2) years.

55.     During the prosecution of the '591 Application, MATT WALTERS continued to fraudulently conceal and not disclose to the Patent Office that Jaime Schlorff was the sole inventor, or at least a co-inventor of the claimed subject matter of the '591 Application.

56.     During the prosecution of the '591 Application, the Patent Office rejected the claims that did not require the trigger to be sandpaper. (**Exhibit F**).  The Patent Office rejection was based on NOVA's '156 Patent. (**Exhibit A**). This Patent Office rejection demonstrates the relevance of NOVA's '156 Patent and NOVA's Confidential Information to the '295 and '591 Applications.

57.     During its prosecution, the '591 Application was amended (**Exhibit G**) to assert priority on the March 16, 2001 filing date of the '295 Provisional Application. The claims were also amended to require the trigger to be sandpaper.

58.     The '591 Application issued as U.S. Patent No. 6,878,157 (the '157 Patent) on April 12, 2005 to MATT WALTERS as the sole inventor. (**Exhibit I**). The issuance of the '157 Patent was the first publication of the patent by the Patent Office.  All the claims of the '157 Patent require the trigger to be sandpaper.  The cover page of the '157 Patent does not indicate that MATT WALTERS assigned the patent to OMNI THERM.

## NOVA DESIGN Learns of WALTERS' Misconduct and Concealment

59.     Prior to the filing of this Complaint, neither MATT WALTERS, DALE WALTERS, BRIAN GUERRA, OMNI THERM or any other Defendant advised NOVA DESIGN or Jaime Schlorff of the existence of the '295 and '591 Applications or the '157 Patent.

60.     On June 23, 2010, MATT WALTERS telephoned Jaime Schlorff. They had a follow up telephone call a few days later.  MATT WALTERS told Ms. Schlorff that he was getting back into the heel warmer business, and asked if she knew of any non-aluminum oxide triggers.  MATT WALTERS once again fraudulently concealed and did not tell Jaime Schlorff about the '295 Provisional Application, the '591 Patent Application or the '157 Patent.  MATT WALTERS also fraudulently concealed and did not tell Jaime Schlorff that he sold or licensed the '157 Patent to RESPIRONICS, RCI INVESTMENTS, PHILIPS, RESPIRONICS NOVAMETRIX or CHILDREN'S MEDICAL VENTURES, or that one or more of these Defendants was making and selling infant heel warmers covered by the '157 Patent.

61.    NOVA DESIGN and Jaime Schlorff did not know about the '295 Provisional Application, the '591 Patent Application or the '157 Patent until after MATT WALTERS June 23, 2010 call to Jaime Schlorff.

62.    After MATT WALTERS' June 23, 2010 telephone call to Jaime Schlorff, Ms. Schlorff became suspicious and checked Patent Office web site records.  Ms. Schlorff and NOVA DESIGN were surprised to learned about the existence of the '157 Patent, that the '157 Patent listed MATT WALTERS as the sole inventor, that the '157 Patent disclosed and claimed a heat pack with a sandpaper trigger, and that the '295 and '591 Applications for the '157 Patent were filed during the term of the 1998 Confidentiality Agreement without first advising NOVA DESIGN and obtaining NOVA DESIGN's prior written authorization.

63    For the above noted reasons, Jamie Schlorff and NOVA DESIGN believe Ms. Schlorff is the true inventor and NOVA DESIGN is the true owner of the '157 Patent.  Had NOVA DESIGN or Jaime Schlorff previously known about the '295 and '591 Applications and/or the '157 Patent, NOVA DESIGN and Jaime Schlorff would have required that Jaime Schlorff be listed as the sole inventor and NOVA DESIGN be the sole owner in accordance with Paragraphs 2, 4 and 5 of the 1998 Confidentiality Agreement.

64.    On information and belief, RESPIRONICS and/or CHILDREN'S MEDICAL VENTURES are and have been making, purchasing, importing and/or selling infant heel warmer heat packs with sodium hydrate or sodium acetate solution and sandpaper triggers that incorporate NOVA's Confidential Information for several years.

65.    CHILDREN'S MEDICAL VENTURES currently offers for sale and sells infant heel warmer heat packs that incorporate NOVA's Confidential Information under a HEEL SNUGGLER mark as shown by **Exhibit J**.

66.    The HEEL SNUGGLER infant heel warmer heat pack shown in **Exhibit J** states it is "Manufactured for Children's Medical Ventures, LLC, Monroeville, PA" and lists a PHILIPS name and mark.

67.     The web site printouts shown in **Exhibit J** advertise and offer to sell the HEEL SNUGGLER infant heel warmer heat packs under the RESPIRONICS, PHILIPS and CHILDREN's MEDICAL VENTURES names and marks.  The web site print out listing RESPIRONICS states "patented button activator eliminates risk of bag puncture." The web site listing PHILIPS states "patent pending."

68.     U.S. Registration No. 2,967,826 for HEEL SNUGGLER to RIC INVESTMENTS issued July 12, 2005 lists a date of first use in interstate commerce of May 2004. (**Exhibit K**).

69.     On information and belief, CHILDREN'S MEDICAL VENTURES was a wholly owned subsidiary of RESPRIONICS NOVAMETRICS, and RESPIRONICS NOVAMETRIX was a wholly owned subsidiary of RESPIRONICS.  On information and belief, RESPIRONICS recently sold RESPIRONICS NOVAMETRIX and CHILDREN'S MEDICAL VENTURES to PHILIPS.

70.     On information and belief, RESPIRONICS, PHILIPS, RIC INVESTMENTS, RESPIRONICS NOVAMETRIX and/or CHILDREN'S MEDICAL VENTURES have sold and/or currently sell over a million HEEL SNUGGLER infant heel warmer heat packs annually.

71.     On information and belief, the HEEL SNUGGLER infant heel warmers are sold to and used in hospitals and medical facilities throughout the United States, including the Philadelphia area.

72.     On information and belief, the HEEL SNUGGLER infant heel warmers are covered by and infringe the '157 Patent. (**Exhibit I**).

73.     On information and belief, MATT WALTERS is either licensing or has sold the '157 Patent to RESPIRONICS, RCI INVESTMENTS, RESPIRONICS NOVAMETRIX and/or CHILDREN'S MEDICAL VENTURES.  On information and belief, OMNI THERM was acquired by one of these Defendants in about 2006, and its assets were relocated to RESPIRONICS place of business in Murrysville Pennsylvania.

74.     Notwithstanding that Jaime Schlorff is the true inventor and NOVA DESIGN is the true owner of the '157 Patent, on information and belief, the Defendants have marketed or otherwise communicated to competitors that their HEEL SNUGGLER infant heel warmers are patented in an attempt to improperly inhibit competition.

75.     The defendants have financially benefited from the '157 Patent, but have failed to compensate the NOVA DESIGN for the '157 Patent.

76.     NOVA DESIGN did not learn of the HEEL SNUGGLER infant heel warmer or that RESPIRONICS, PHILIPS and/or CHILDREN'S MEDICAL VENTURES were making and/or selling infant heel warmers covered by the '157 Patent until after MATT WALTERS' June 23, 2010 telephone call to Jaime Schlorff and after NOVA DESIGN learned .of the '157 Patent.

77.     On April 20, 2004, Respironics Novametrics, Inc., or RCI Investments, Inc. was issued U.S. Patent No. 6,723,115. The cover of the '115 patent lists Respironics Novametrix, Inc. The U.S. Patent & Trademark Office web site assignment records indicate the inventor assigned the patent to RCI Investments, Inc., which merged into RCI Investments, LLC ("RCI INVESTMENTS"). On information and belief, Respironics Novametrics, Inc. merged into Respironics Novametrics, LLC ("RESPIRONICS NOVAMETRIX"). The '115 patent discloses a metal trigger, and on information and belief pertains to a different infant heel warmers sold by the Defendants.

### RESPIRONICS Acquires OMNI THERM Assets

78.     On information and belief, RESPIRONICS acquired certain assets of OMNI THERM for $2,625,000 on or about May 15, 2006. A web site print out detailing this purchase is attached as **Exhibit K**. On information and belief, the primary or major asset of OMNI THERM acquired by RESIRONICS was the '157 Patent or the licensing rights to the '157 Patent.

79.     On information and belief, MATT WALTERS and DALE WALTERS received the bulk of the $2,625,000 received from this sale of OMNI THERM assets to RESPIRONICS prior to the administrative dissolution of OMNI THERM on or about October 13, 2007.

## COUNT I
### Breach of Contract

80.     Plaintiff incorporates by reference the allegation set forth in paragraph 1 through 79 of this Complaint.

81.     The 1998 Confidentiality Agreement is a valid and subsisting contract entered into by and between NOVA DESIGN and OMNI THERM and its officers, MATT WALTERS and DALE WALTERS.

82.     On information and belief, MATT WALTERS signed the Confidentiality Agreement on or about October 13, 1998.

83.     On information and belief, MATT WALTERS and DALE WALTERS were fully aware of the terms of the Confidentiality Agreement from October 13, 1998 forward, were fully aware of MATT WALTERS filing the '295 and '591 Applications and obtaining the '157 Patent, were officers and owners of OMNI THERM from October 13, 1998 until at least the May 15, 2006 acquisition by RESPIRONICS, financially profited from the RESPIRONICS acquisition of OMNI THERM assets including the rights to the '157 Patent, and were involved in the decision to allow OMNI THERM to be administratively dissolve in 2007.

84.     MATT and DALE WALTERS and OMNI THERM received consideration from NOVA DESIGN for the 1998 Confidentiality Agreement. Specifically, MATT and DALE WALTERS and OMNI THERM received NOVA DESIGN's Confidential Information, as well as additional Confidential Information learned by NOVA DESIGN during the term of the 1998 Confidentiality Agreement.

85.     Paragraph 2 of the Confidentiality Agreement requires OMNI THERM, which includes MATT and DALE WALTERS, to maintain NOVA DESIGN's Confidential Information in confidence, and prohibits OMNI THERM from using that Confidential Information for any purpose other than to evaluate the Confidential Information without first obtaining written authorization from NOVA DESIGN.

86.     Paragraph 4 of the Confidentiality Agreement requires OMNI THERM, which includes MATT and DALE WALTERS, to exercise all reasonable efforts to prevent third parties from gaining access to NOVA DESIGN's Confidential Information for a period of three (3) years after the disclosure of that Confidential Information.

87.     Paragraph 5 of the Confidentiality Agreement states that OMNI THERM, which includes MATT and DALE WALTERS, shall obtain no rights of any kind in NOVA DESIGN's Confidential Information by reason of the Agreement.

88.     NOVA DESIGN did not give MATT WALTERS, DALE WALTERS or OMNI THERM authorization to file a provisional or a complete patent application pertaining to NOVA DESIGN's Confidential Information.

89.     Jaime Schlorff did not give MATT WALTERS, DALE WALTERS or OMNI THERM authorization to file a provisional or a complete patent application pertaining to NOVA DESIGN's Confidential Information.

90.     Notwithstanding Paragraph 2 of the Confidentiality Agreement, MATT WALTERS, DALE WALTERS and OMNI THERM failed to maintain NOVA DESIGN's Confidential Information in confidence in breach of the Confidentiality Agreement.

91.     Notwithstanding Paragraph 4 of the Confidentiality Agreement, MATT WALTERS, DALE WALTERS and OMNI THERM failed to exercise all reasonable efforts to prevent third parties from gaining access to NOVA DESIGN's Confidential Information during the term of the Agreement in breach of the Confidentiality Agreement.

92.     Notwithstanding Paragraph 2 of the Confidentiality Agreement, MATT WALTERS, DALE WALTERS and/or OMNI THERM disclosed NOVA's Confidential Information to Attorney Gilster and the he GHG Law Firm in breach of the Confidentiality Agreement.

93.     Notwithstanding Paragraph 2 of the Confidentiality Agreement, MATT WALTERS, DALE WALTERS and/or OMNI THERM used NOVA's Confidential Information during the term of the 1998 Confidentiality Agreement for a purpose other than to evaluate NOVA's Confidential Information, particularly for the purpose of filing and prosecuting the '295 and '591 Applications and obtaining the '157 Patent, all in breach of the Confidentiality Agreement.

94.     Notwithstanding Paragraph 5 of the Confidentiality Agreement, MATT WALTERS obtained patent rights pertaining to NOVA's Confidential Information in breach of the Confidentiality Agreement. In particular, MATT WALTERS obtained the '157 Patent claiming rights to NOVA's Confidential Information.

95.     Notwithstanding Paragraph 2 of the Confidentiality Agreement, on information and belief, MATT WALTERS, DALE WALTERS and/or OMNI THERM began commercially manufacturing, offering to sell, and/or selling heat packs incorporating NOVA's Confidential Information in breach of the Confidentiality Agreement.

96.     Notwithstanding Paragraph 4 of the Confidentiality Agreement, on information and belief, MATT WALTERS, DALE WALTERS and/or OMNI THERM began commercially manufacturing, offering to sell, and/or selling heat packs incorporating NOVA's Confidential Information without NOVA DESIGN's prior written authorization during the term of and in breach of the Confidentiality Agreement.

97.     Notwithstanding Paragraph 2 of the Confidentiality Agreement, on information and belief, MATT WALTERS, DALE WALTERS and OMNI THERM began inducing RESPIRONICS, RESPIRONICS NOVAMETRICS and/or CHILDRENS MEDICAL VENTURES to make, buy or sell heat packs incorporating NOVA's Confidential Information in breach of the Confidentiality Agreement.

98.     Notwithstanding Paragraph 4 of the Confidentiality Agreement, on information and belief, MATT WALTERS, DALE WALTERS and OMNI THERM began inducing RESPIRONICS, RESPIRONICS NOVAMETRICS and/or CHILDRENS MEDICAL VENTURES to make, buy or sell heat packs incorporating NOVA's Confidential Information during the term of the Confidentiality Agreement in breach of the Confidentiality Agreement.

99.     NOVA DESIGN was materially damaged by MATT WALTERS, DALE WALTERS and OMNI THERM's breach of the 1998 Confidentiality Agreement.

## COUNT II
### Fraudulent Misrepresentation (Restatement of Torts §555) or, in the alternative, Negligent Misrepresentation (Restatement of Torts §552)

100.   Plaintiff incorporates by reference the allegation set forth in paragraph 1 through 99 of this Complaint.

101.   The 1998 Confidentiality Agreement imposed contractual duties and a duty of good faith and fair dealing between OMNI THERM and its officers and employees and NOVA DESIGN regarding the subject matter of the 1998 Confidentiality Agreement, particularly regarding the confidential nature of NOVA's Confidential Information, and NOVA DESIGNS' rights to its Confidential Information, including patent rights thereto.

102.   When MATT WALTERS told Jaime Schlorff on November 30, 2000, December 12, 2000 and May 9, 2001 that OMNI THERM could not get pieces of aluminum oxide sandpaper to fall into heat packs during operation of OMNI THERM's form, fill and seal machine, he knew or should have known that this was incorrect, inaccurate and/or wholly misleading.  On information and belief, on one or more of these dates he knew or should have known: a) that OMNI THERM had already been able to get the pieces of aluminum oxide sandpaper to fall into the heat packs during operation of its form, fill and seal machine, b) that OMNI THERM expected to be able to get the sandpaper to fall into the heat packs during operation of its form, fill and seal machine or c) that he had already met with the GHG Law Firm and/or Attorney Gilster to discuss filing a patent application for a heat pack with the sandpaper trigger technology, and/or had already set in motion the filing of the '295 Provisional Application.

103.   When BRIAN GUERRA told Jaime Schlorff on about May 14, 2001 that OMNI THERM could not get pieces of aluminum oxide sandpaper to fall into heat packs during operation of OMNI THERM's form, fill and seal machine, he knew or should have known that this was incorrect, inaccurate and/or wholly misleading. On information and belief, at that time, BRIAN GUERRA knew or should have known:  a) that OMNI THERM had already been able to get the pieces of aluminum oxide sandpaper to fall into the heat packs during operation of its form, fill and seal machine, b) that OMNI THERM expected to be able to get the sandpaper to fall into the heat packs during operation of its form, fill and seal machine or c) that MATT WALTERS had already met with the GHG