IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOVA DESIGN TECHNOLOGIES, : CIVIL ACTION
LTD. :
 :
    v. :
 :
MATTHEW K. WALTERS, et al. : NO. 10-7618

MEMORANDUM

McLaughlin, J.                                   October 24, 2011

      In this action, Nova Design Technologies, Limited ("Nova") filed suit against Matthew K. Walters, Dale E. Walters, and Brian Guerra ("individual defendants"), as well as Respironics, Inc.; RIC Investments, LLC ("RIC"); Philips Holding USA, Inc. ("Philips"); Respironics Novametrix, LLC; and Children's Medical Ventures, LLC ("CMV") ("corporate defendants"). The action arose from the alleged use of Nova's confidential information by the individual defendants, as officers of a company named Omni Therm, to apply for a patent used in infant heel warmers now marketed and sold by CMV. The plaintiff brought claims for breach of contract, fraudulent or negligent misrepresentation, fraudulent concealment or nondisclosure, conversion, trade secret misappropriation, correction of inventorship, patent infringement, unjust enrichment, and violation of the Sherman Act.

      The defendants RIC and Philips have filed a Renewed Motion to Dismiss under Rule 12(b)(2) for lack of personal

jurisdiction, and the plaintiff has filed a Motion for Leave to File a Sur-reply to the defendants' motion. The Court will grant the defendants' motion and deny the plaintiff's motion.

I.  Factual and Procedural Background[1]

In 1992, Nova, through its research scientists, developed a new trigger for a heat pack composed of circular ceramic objects that can be squeezed or rubbed together while suspended in a supercooled aqueous salt solution, resulting in a crystallization process that gives off latent heat. The trigger, when placed inside a flexible plastic bag containing such a solution, e.g., sodium acetate, represented an advance in the product design of heat packs. Heat packs are used, for example, to warm hands at outdoor sporting events and in heel-warming packs used on infants in hospitals. Earlier heat pack designs had used triggers that were less stable or sharper than those developed by Nova, and thus placed the heat packs at risk for puncture or unintentional activation when dropped. Nova sought to patent the new trigger and was issued U.S. Patent No. 5,275,156 in January, 1994. Am. Compl. ¶¶ 19-20.

In 1995, a researcher at Nova, Jaime Schlorff, began to

---

[1] The Court limits its discussion of the facts to those relevant to the instant motions. Where they are not drawn from the Amended Complaint, the facts stated are taken from declarations attached to the defendants' motions and are uncontested.

develop an non-metallic aluminum oxide "sandpaper trigger" that was even more effective at initiating crystallization and avoiding preactivation, and that could be used with a range of sodium acetate concentrations. Schlorff contacted Omni Therm, a heat pack retailer, and asked its officers Dale and Matt Walters whether Omni Therm would be interested in purchasing or licensing the new non-metallic sandpaper triggers. The Walters expressed interest and began negotiations to determine how to proceed; the Walters and Nova signed a Confidentiality Agreement on October 13, 1998 so that Omni Therm could evaluate Nova's trigger technology. The Confidentiality Agreement covered a three-year period or until Nova received a patent for the sandpaper-trigger design. Around that time, Matt Walters told Schlorff that Omni Therm sold infant heel warmers to Respironics and/or CMV. Id. ¶¶ 22-24.

Throughout the end of 1998 and the beginning of 1999, Walters and Schlorff engaged in negotiations over Omni Therm's purchase or use of the sandpaper triggers. Negotiations broke down over price around February 24, 1999, at which point Nova did not hear from Omni Therm for over 18 months. Negotiations were reopened in the fall of 2000, and advanced to the point where Matt Walters told Schlorff that Omni Therm would order and pay for 20,000 triggers, although Nova later experienced some difficulty with the production of triggers to Omni Therm's

specifications. Id. ¶¶ 25-41.

On March 16, 2001, the Walters engaged counsel to prepare a patent application ("'295 Application") for a heat pack with a sandpaper trigger without informing Nova, which the plaintiffs allege was in violation of the Confidentiality Agreement. The '295 Application lists Matt Walters as the inventor. By the middle of 2001, Omni Therm began to make heat packs with aluminum oxide sandpaper triggers. A similar application ("'591 Application") was filed in November 2001, listing Matt Walters as the inventor. The '591 Application was amended to assert priority as of the '295 Application's filing date, and on April 12, 2005, Walters was ultimately granted U.S. Patent No. 6,878,157 ("'157 Patent"). Id. ¶¶ 42-44, 48-49, 57-58.

In 2002, Nova began to sell heat packs with the aluminum oxide sandpaper trigger developed by Schlorff. The plaintiff alleges that Respironics and/or CMV have also been making, purchasing, importing, and/or selling infant heel warmer heat packs made with a sodium hydrate solution and sandpaper trigger for several years and sold under a "Heel Snuggler" mark. The only defendants alleged to have sold heat packs under the "Heel Snuggler" mark are CMV and Respironics. Id. ¶¶ 21, 64-66. Omni Therm was the wholesale provider of heel warmers to Respironics "through Children's Medical Ventures" until its

acquisition by Respironics. Am. Compl. Ex. K.

The plaintiff notes that "Heel Snuggler" heat packs state its manufacture by CMV and include a Philips name and mark. The plaintiff included website printouts advertising and offering the Heel Snuggler for sale under Respironics, Philips, and CMV marks. The Heel Snuggler mark was issued to RIC Investments on July 12, 2005 under U.S. Registration No. 2,967,826. Id. ¶¶ 66-68.

Nova alleges that Respironics, Philips, RIC Investments, Respironics Novametrix, and/or CMV sold over one million Heel Snuggler heat packs annually, and that the Heel Snuggler infringes on the '157 Patent, which the plaintiffs contend properly belongs to Schlorff. Matt Walters is alleged to have licensed or sold the '157 Patent to Respironics, RIC, Respoironics Novametrix, or CMV, either directly or through the sale of certain assets of Omni Therm on May 15, 2006. Id. ¶¶ 69-74, 78. CMV is the current and sole owner of the '157 Patent pursuant to an Asset Purchase Agreement between Omni Therm and CMV dated May 15, 2006. CMV is also solely responsible for, and controls, the marketing, manufacture, and distribution of heel warmers bearing the "Heel Snuggler" mark. Decl. Of William Thompson, Renewed Mot. to Dismiss Defs. Ex. 9 ¶¶ 3, 5.

RIC Investments, LLC and Philips Holding USA, Inc. ("moving defendants") clarified their corporate structures and

relationships to the forum in a series of sworn declarations attached as exhibits to their motions to dismiss and at the request of the Court following a hearing on May 9, 2011. Tr. Oral Arg. 58:8-60:25. The Court summarizes the relevant characteristics of each moving defendant as alleged in the complaint and from undisputed averments of the declarations appearing in the Renewed Motion to Dismiss.

### A. Philips

Philips, a Delaware corporation, is a holding company with its principal place of business in Andover, Massachusetts. Philips directly or indirectly owns defendants Respironics, Respironics Novamterix, RIC, and CMV. Philips has no employees. Philips does not own any U.S. patents. Philips does not exercise control over its subsidiaries by using them as a marketing division or exclusive distributor. Although Philips and CMV have some officers in common, management and financial functions are separated. Philips does not derive any revenue from products sold or used in Pennsylvania. Decl. of Joseph Innamorati, Mot. to Dismiss Def. Philips Holding USA, Inc. ("Philips Mot."), Ex. B ¶¶ 3-16.

Philips is a wholly-owned subsidiary of Koninklijke Philips Electronics N.V., a publicly-held company, which owns the "Philips" mark registered in the United States. Philips Holding USA, Inc.'s Rule 7.1 Disclosure Statement (Docket No. 25). The

"Philips" and "Heel Snuggler" marks appear, along with "Children's Medical Ventures," on the Heel Snuggler product. Am. Compl. Exs. J, K.

B. <u>RIC</u>

RIC, a Delaware corporation, is a holding company whose predecessor (RIC Investments, Inc.) was created to handle the licensing of intellectual property to its subsidiaries and other businesses. RIC's principal place of business is in Delaware. RIC is an "indirect subsidiary" of Respironics, Inc., which is wholly owned by Philips. RIC does not manufacture, sell, offer to sell, or import any products in the United States, nor does it market or advertise any products in the United States. RIC and CMV have some officers in common, but maintain separate management and accounting records. RIC derives no revenue from the sale of any products sold by any other defendant in the instant action. Decl. of Kenneth J. Kubacki, Mot. to Dismiss Def. RIC Investments, LLC ("RIC Mot.") (Docket No. 31), Ex. B ¶¶ 3-7, 12-13.

In July 2005, RIC registered the trademark for "Heel Snuggler" with the U.S. Patent and Trademark Office, and RIC continues to own the mark. Pl.'s Resp. to Renewed Mot. to Dismiss Defs. Philips & RIC (Docket No. 65), Ex. 1 at 1. The "Heel Snuggler" mark appears on the heel warmer products that the plaintiff alleges infringes the '157 Patent (which is alleged to

be owned by Schlorff, the Nova researcher).

    C.    Motions to Dismiss

Philips and RIC separately moved on March 21, 2011 to dismiss the complaint against them for lack of personal jurisdiction, each asserting that they did not have enough contacts with Pennsylvania to sustain jurisdiction (Docket Nos. 31-32). The Court held oral argument on these motions (among others) and the parties agreed to seek a resolution of the jurisdictional issues through the provision of declarations clarifying the relationships of the corporate defendants to one another and the products at issue. Tr. Oral Arg. 57-59. The parties were directed to update the Court by July 1, 2011 as to the status of discussions regarding the preparation of an affidavit by RIC and Philips describing their relationships to the other corporate defendants, to the '157 Patent, and to the Heel Snugglers product, with an eye to voluntarily dismissing the moving defendants.

The moving defendants conferred with counsel for the plaintiffs and provided declarations stating that neither RIC nor Philips has had any involvement in the manufacture, sale, or distribution of the Heel Snuggler product, and that CMV is the sole entity responsible for those activities. The plaintiff insisted upon a declaration that RIC and Philips were not involved in the licensing or controlling the quality of goods

-8-

bearing the "Philips" or "Heel Snuggler" marks. The plaintiff also sought information demonstrating that Matt Walters had assigned the '157 Patent to Omni Therm and/or CMV. When this did not resolve the dispute regarding the Court's jurisdiction over RIC and Philips, those defendants filed a joint Renewed Motion to Dismiss. Renewed Mots. to Dismiss Defs. Exs. 5, 8, 9.

Officers of RIC and Philips submitted additional declarations stating that neither company had possession or control over documents relating to the 1998 Confidentiality Agreement, claims by Schlorff regarding the development of the sandpaper trigger, or the '157 Patent. Defs.' Reply Br. to Nova Design's Resp. to Renewed Mot. to Dismiss Defs., Exs. 2-3. The plaintiff requested permission to file a sur-reply to the Renewed Motion to Dismiss to inform the Court of the information it has not received from the moving defendants in jurisdictional discovery. Specifically, the plaintiff seeks information regarding the individuals controlling the quality of the "Heel Snuggler" mark, prosecution and enforcement of the '157 patent, marketing information with respect to the Heel Snuggler products, and any licensing agreements with respect to the Heel Snuggler and Philips marks. Pl.'s. Mot. for Leave to File a Sur-Reply (Docket No. 68) at 2.

II. Discussion

Because the question of jurisdiction is "intimately

involved with the substance of the patent laws," a district court faced with a patent infringement suit applies the law of the Federal Circuit when analyzing the existence of personal jurisdiction. Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). Where a finding of patent infringement is "a critical factor in determining liability on the non-patent claims," Federal Circuit law should apply. Breckenridge Pharm., Inc. v. Metabolite Labs, Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006). Here, the facts that are relevant to infringement are also likely to resolve the non-patent claims of misappropriation and misrepresentation, and so the Court applies Federal Circuit law to the question of jurisdiction.

The Court's determination of personal jurisdiction over these out-of-state defendants is dependent upon two inquiries: (1) whether Pennsylvania's long-arm statute reaches the defendants; and (2) whether the assertion of personal jurisdiction comports with constitutional notions of due process. Avocent, 552 F.3d at 1329.

Pennsylvania's long-arm statute is coextensive with the limits of due process, so the Court's inquiry collapses into a single inquiry, whether the assertion of jurisdiction over RIC and Philips comports with due process. 42 Pa. Cons. Stat. § 5322(b). In a patent case, the United States Court of Appeals

for the Federal Circuit instructs district courts to examine three factors in determining whether the exercise of jurisdiction over an out-of-state defendant satisfies due process. These factors are: (1) whether the defendant "purposefully directed" its activities at forum residents; (2) whether the claim "arises out of or relates to" the defendant's forum activities; and (3) whether the assertion of personal jurisdiction would be "reasonable and fair." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1202 (Fed. Cir. 2003). These factors correspond to the "minimum contacts" and "fair play and substantial justice" prongs of the International Shoe due process analysis. Id.; see also Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945).

The plaintiff's burden is to establish that the defendant has minimum contacts with the forum; in addition,

> where the district court's disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that the defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.

Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349-50 (Fed. Cir. 2003) (internal citations omitted).

A.  Philips

Philips is the direct parent company of defendant Respironics, Inc., and through it, partially owns RIC and fully owns Respironics Novametrix, LLC. Respironics Novametrix in turn owns CMV, the owner of the '157 Patent and manufacturer, marketer, and seller of the Heel Snuggler product. Philips is a Delaware-incorporated holding company with its principal place of business in Massachusetts. It neither manufactures nor sells any products in Pennsylvania, nor derives any revenue from the products sold by its subsidiary CMV.

The only contact that the plaintiff alleges Philips has with Pennsylvania is through its ownership of the subsidiaries alleged to have manufactured infringing goods and misappropriated trade secrets. The plaintiff makes no specific allegations that Philips engaged in any acts or omissions within or directed at the forum, let alone that those contacts gave rise to the claims set forth in the Amended Complaint. The most that the plaintiff alleges with respect to the activities of Philips is that through its relationship with Respironics and CMV as their parent holding company, the forum activities of the subsidiaries should be imputed to the defendant.

The Court of Appeals for the Federal Circuit has not specifically articulated a test for imputing the contacts of a subsidiary corporation to its parent for purposes of

jurisdiction,[2] so the Court turns to authority from within the Third Circuit. The variety of tests developed to analyze the parent-subsidiary relationship have all focused on the extent to which the subsidiary performs functions in the forum that the parent would otherwise have conducted. See Gallagher v. Mazda Motor of Am., Inc., 781 F. Supp. 1079 (E.D. Pa. 1992) (describing three related lines of cases discussing the issue).[3] These tests are generally consistent with the agency theory of jurisdiction articulated recently by the Court of Appeals for the Third Circuit. See Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008) (general jurisdiction will not extend to the parent

---

[2] But see 3D Systems, Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1380-81 (Fed Cir. 1998) (noting the Federal Circuit's strong presumption of upholding the corporate form in declining to impute subsidiary's contacts to the parent in analyzing jurisdiction, and citing Third Circuit precedent); see also D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 556 F.3d 94, 108-09 (3d Cir. 2009) (testing personal jurisdiction of a parent company on a principal-agent basis, where the agent's activities "are of such a character as to amount to doing business of the parent") (quoting Curtis Publ'g Co. v. Cassel, 302 F.2d 132, 137 (10th Cir. 1962)).

[3] The test adopted by the Gallagher court finds imputation appropriate where the subsidiary performs "functions that, but for the existence of the subsidiary, the parent would have to undertake." Id. at 1085 (describing these activities as "vital to the survival or the success of the parent"). In other words, imputation is appropriate where the subsidiary substitutes for the parent in the forum. Gallagher explicitly contrasted such relationships to that of a holding company, where "the subsidiary is not performing a function that the parent would otherwise have had to perform itself . . . . In such a case, imputing jurisdictional contacts would be improper." Id.

unless the plaintiff shows control of the subsidiary).

The plaintiff here has failed to allege facts showing that Respironics or CMV conducts activities in the forum that Philips would otherwise have conducted itself. The plaintiff has not alleged that Philips directs the activities of its subsidiaries. The plaintiff has not controverted the defendants' supporting declarations that Philips exercises no control over the activities of CMV or Respironics.[4] Where a mere holding company-subsidiary relationship exists, the subsidiary's contacts with the forum should not be imputed to the parent absent allegations showing why the distinct corporate structures should not be respected. The plaintiff has not made those allegations here, and the Court finds that no personal jurisdiction exists with respect to Philips based on the activity of its subsidiaries.

For the same reasons, exercising personal jurisdiction on the basis of "continuous and systematic general business contacts" is inappropriate. See, e.g., Helicopteros Nacionales

---

[4] The plaintiff had argued earlier in this matter that control over the "Philips" mark appearing alongside that of CMV on the Heel Snuggler and on the Respironics web site might support the exercise of jurisdiction. Pl.'s Resp. to Defs.' Mots. to Dismiss (Docket No. 41) 7 & Ex. 3. Further discovery by the plaintiff determined that the Philips mark does not belong to the moving defendant but to its nonparty parent, Koninklijke Philips Electronics N.V. Pl.'s Resp. to Defs.' Renewed Mot. to Dismiss (Docket No. 65) Ex. 1 at 4-5.

de Colombia, S.A. v. Hall, 46 U.S. 408, 415-17 (1984) (citing Int'l Shoe, 326 U.S. at 320). The plaintiff is unable to allege facts stating a prima facie case that such contacts exist, either directly by Philips or through its subsidiaries. See Kehm Oil, 537 F.3d at 300. The Court will grant the defendants' motion with respect to Philips.

B.  RIC

The plaintiff initially argued that jurisdiction could be found on the basis of RIC's holding (and licensing or other derivative use) of the '157 Patent. The defendants' declarations and the Asset Purchase Agreement documenting the transfer of the '157 Patent from Omni Therm to CMV demonstrate that CMV is the sole owner of the '157 Patent, not RIC, and the plaintiff has not alleged otherwise. The plaintiff relies on arguments that "there is no way to know if Philips Holding or RIC were in the chain of ownership of the '157 Patent." Pl.'s Resp. to Defs.' Renewed Mot. to Dismiss 5. The plaintiff cannot meet its burden through suggestions of such a relationship without alleging how any intermediate ownership shows that RIC "purposefully directed its activities" at the forum. Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1018 (Fed. Cir. 2009) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

Nova also seeks to assert the existence of personal

jurisdiction over RIC because of its conduct respecting the use of the "Heel Snuggler" trademark by CMV. The plaintiff argues that "a licensee's use of a mark inures to the benefit of the licensor-owner of the mark," and that licensing the Heel Snuggler mark for CMV's use is in fact an activity conducted for the benefit of RIC. Pl.'s Resp. to Defs.' Renewed Mot. to Dismiss 6 (citing Lanham Act § 5, 5 U.S.C. § 1055). Nova argues that RIC is subject to a statutory duty to control the quality of goods bearing the mark and that such control demonstrates the "purposeful availment" required to establish specific jurisdiction.[5] Nova's argument fails for two reasons.

First, it cannot be said that the types of claims asserted by the plaintiff, for example, patent infringement, fraudulent misrepresentation, and Sherman Act violations, "arise out of" RIC's activities in Pennsylvania; indeed, RIC conducts no business in Pennsylvania. The Court notes, but does not decide, that only the claim for unjust enrichment could plausibly be

---

[5] The plaintiff apparently was willing to voluntarily dismiss RIC and Philips provided the moving defendants drafted a declaration stating that they "have not been and are not now involved in licensing the HEEL SNUGGLER or PHILIPS marks, and have taken no part in authorizing the use of or controlling the quality of the infant heel warmer goods sold under these marks." Defs.' Renewed Mot. to Dismiss Ex. 4 (internal quotations omitted). The defendants argue that providing such a disclaimer could be prejudicial to their ability to police the use of the mark. Id. at 2 n.2. The Court concludes that proof of the licensing activity is not essential to resolve the question of jurisdiction.

directed at RIC in connection with its actions in Pennsylvania. Even so, under the plaintiff's allegations, the defendants and their holding companies would be unjustly enriched whether or not the infringing products bore the "Heel Snuggler" mark.

Second, Federal Circuit law holds that licensing activity, standing alone, is insufficient to sustain jurisdiction over a nonresident defendant. See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998). In Red Wing Shoe, the plaintiff asserted that the district court had personal jurisdiction over the defendant because of three warning letters it sent to the plaintiff that (a) suggested the plaintiff was manufacturing products that infringed the defendant's patent and (b) offered to negotiate nonexclusive license terms. Further, the plaintiff argued that jurisdiction was proper because the defendant had thirty-six licensees of its patent selling products in the forum, many of which maintained retail stores in-state. Id. at 1355-58.

The district court granted the defendant's motion to dismiss for lack of personal jurisdiction. The Federal Circuit affirmed, noting that even if the plaintiff's declaratory judgment action arose out of the defendant's cease-and-desist letters, the "fair play and substantial justice" prong of the Burger King analysis required the court to acknowledge that the defendant should not have been subject to suit simply because it

asserted its intellectual property rights. Further, the court found that the defendant's revenue stream deriving from its licensing activity was "irrelevant" and "not 'constitutionally cognizable.'" Id. at 1361-62 (quoting World-Wide Volkswagen, 444 U.S. at 299).

The plaintiff seeks to distinguish Red Wing Shoe because that case involved patent and not trademark licensing. The plaintiff argues that because of a heightened duty to monitor product quality that attaches to trademark ownership, RIC has the requisite minimum contacts with Pennsylvania. In spite of these differences, the Court finds the reasoning of Red Wing Shoe equally applicable to the instant case. See, e.g., Farina v. Nokia, 578 F. Supp. 2d 740, 751 (E.D. Pa. 2008) (applying the Red Wing Shoe analysis to a trademark suit), aff'd on other grounds, 625 F.3d 97 (3d Cir. 2010). Indeed, the Red Wing Shoe defendant exercised regular oversight in the forum with respect to its intellectual property and had significantly more licensing "contacts" with the forum than can be alleged here. And although RIC and CMV are related entities (through Philips), the plaintiff cannot allege that RIC directly controls CMV. Thus, RIC is "doing business with a company that does business in [the forum]," which cannot of itself give rise to a finding of minimum contacts. Red Wing Shoe, 148 F.3d at 1361.

Without more, the plaintiff cannot meet its burden of

making a prima facie showing that the Court has personal jurisdiction over RIC. The Court, upon resolving any factual conflicts from the affidavits in favor of the plaintiff, cannot conclude that through its licensing activity alone RIC has sufficient contacts with Pennsylvania to sustain jurisdiction. The Court will, therefore, grant the defendants' motion with respect to RIC.

C. The Plaintiff's Motion for Leave to File a Sur-Reply

Finally, the plaintiff moves for leave to file a brief in sur-reply alleging that the defendants have not produced enough information in jurisdictional discovery for it to make the showing required to sustain a finding of jurisdiction over the moving defendants. For example, the plaintiff argues in its motion that "the Corporate Defendants [sic] responses show that at least RIC is more than a mere holding company, and has engaged in acts that avail itself to this Court's jurisdiction." Pl.'s Mot. for Leave to File a Sur-Reply 1. However, the plaintiff does not specify what these statements are or how they demonstrate the existence of jurisdiction.

The plaintiff further argues that before the Renewed Motion to Dismiss is decided, it requires responses to discovery requests relating to (a) control of the "Heel Snuggler" and "Philips" marks, (b) efforts to prosecute and enforce the '157

Patent, and (c) how the Heel Snuggler product was marketed. The defendants argue that the plaintiff's requests reveal no new factual allegations on the issue of jurisdiction, and contend that they have substantially complied with the remainder of the plaintiff's requests.

The Court concludes that even if the documents and information the plaintiff seeks revealed that RIC and Philips were heavily involved in controlling the use and quality of goods bearing the "Heel Snuggler" and "Philips" marks, such revelations would be insufficient to sustain a finding of jurisdiction. For the reasons detailed above, holding and benefitting economically from a patent or trademark through licensing activity cannot alone form the basis for jurisdiction. The Court grants the plaintiff's motion to the extent its proposed contents were considered in ruling on the defendants' instant motion, but denies it to the extent that the plaintiff is denied leave to file a formal brief in sur-reply.

An appropriate order follows.