IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOVA DESIGN TECHNOLOGIES,    :    CIVIL ACTION
LTD.                          :
                             :
          v.                 :
                             :
MATTHEW K. WALTERS, et al.   :    NO. 10-7618


<u>MEMORANDUM</u>

McLaughlin, J.                                June 27, 2012

        This case arises from an ownership dispute over the

technology embodied in United States Patent Number 6,878,157 (the

"'157 Patent"), which relates to technology used in heat packs.

The plaintiff, Nova Design Technologies, Ltd. ("Nova"), asserts

that its founder Andrew Milligan and researcher Jaime Schlorff

invented and developed a sandpaper-based trigger for heat packs.

Nova asserts that Matthew Walters, Brian Guerra, and Dale Walters

(the "individual defendants") stole the idea from them and used

it to apply for and receive the '157 Patent, which they later

sold to the defendants Children's Medical Ventures, LLC ("CMV"),

Respironics, Inc., and Respironics Novametrix, LLC (the

"corporate defendants").[1]

        The Court bifurcated proceedings in an order dated May

23, 2011, in which the Counts I-VI of the complaint would be

subject to discovery and dispositive motions separately from

_____

        [1] The Court dismissed two other defendants, RIC Investments,
LLC and Philips Holding USA, Inc., for lack of personal
jurisdiction.  Mem. Op. Oct. 25, 2011 (Docket No. 71).

Counts VII-XI.  The Court dismissed Count I, which was brought only against Matthew Walters, in an order dated July 7, 2011. The individual defendants have moved for summary judgment on Counts II-VI, and the corporate defendants have moved separately for summary judgment on Counts III-V.  The Court will grant the individual defendants' motion in part and the corporate defendants' motions in full.

I.   Background

Nova filed this action on December 30, 2010 and filed an amended complaint on February 15, 2011.  It alleges that Schlorff and Milligan invented an aluminum oxide sandpaper "trigger" for use in therapeutic heat packs in or around 1994. Heat pack triggers of this kind are apparently manipulated by the user to release particulate matter into a supercooled solution and cause a phase change, activating the heat pack and releasing warmth.

Nova alleges that in 1998 it agreed to provide samples of its sandpaper trigger to Omni Therm ("Omni"), a manufacturer of heat packs that was founded by Dale Walters and owned by Matthew Walters.[2]  Nova and Omni executed an agreement covering "confidential information" of Nova's and prohibiting use of that information for anything other than its evaluation for use in

_____

[2] Omni was administratively dissolved in 2007.

manufacturing.  Negotiations between Omni and Nova continued for
several years but no ongoing business relationship was
established.  In 2001, Matthew Walters filed two patent
applications relating to a sandpaper trigger for use in a heat
pack, ultimately resulting in the issuance of the '157 Patent in
2005.  In 2006, Omni sold the '157 Patent, along with most of its
assets, to CMV, a manufacturer and seller of healthcare products
affiliated with Respironics Novametrix and Respironics, Inc.  As
part of that sale CMV hired Brian Guerra, an employee of Omni.

The amended complaint asserted causes of action for
Breach of Contract (Count I) against Matthew Walters; Fraudulent
or Negligent Misrepresentation (Count II) against Matthew and
Dale Walters and Brian Guerra; and the following causes of action
against all defendants: Fraudulent Concealment or Nondisclosure
(Count III); Conversion (Count IV); Trade Secret Misappropriation
(Count V); Correction of Inventorship and Ownership (Count VI);
Patent Infringement (Count VII); Unjust Enrichment (Count VIII);
and for violations of the Sherman Act (Counts IX-XI).  Only
Counts II-VI are at issue in the instant motions, because of the
bifurcation order and the Court's earlier dismissal of Count I as
discharged in Matthew Walters's bankruptcy proceedings.

The individual defendants filed a motion for summary
judgment as to all claims against them in this phase of the
proceedings (Docket No. 93) ("Ind. Defs.' Mot.").  The corporate

-3-

defendants separately filed motions as to the conversion claim
(Docket No. 94) ("Corp. Defs.' Conversion Mot."), fraudulent
concealment claim (Docket No. 96) ("Corp. Defs.' Concealment
Mot."), and trade secret misappropriation claim (Docket No. 98)
("Corp. Defs.' Trade Secret Mot."). Opposition and reply briefs
were filed as to all motions, and the Court held oral argument on
May 9, 2012.


II.  Summary Judgment Record

          The defendants filed separate motions for summary
judgment, each presenting separate statements of undisputed
facts. The plaintiff did not address the defendants' statements
of facts as provided for in Federal Rule of Civil Procedure 56,
but instead filed its own statement of facts.

          The corporate defendants objected to portions of the
plaintiff's Statement of Material Facts on a variety of grounds,
including that (a) many asserted facts were never referred to by
the plaintiff in opposing the motions; (b) some facts were not
supported by citation to the record; and (c) others were
inadmissible because they lacked foundation, were hearsay or
speculation, or constituted inappropriate lay opinion testimony.
The individual defendants joined in those objections.

          The defendants largely took issue with portions of
declarations submitted by Andrew Milligan and Jaime Schlorff,

-4-

Plaintiff's Exhibits A and E.  These declarations include statements regarding CMV heel warmer sales volumes, beliefs as to Omni shipments of sandpaper trigger products, practices of competitors and "persons in the medical industry" generally, and opinions as to the meaning of claims in the '157 Patent. Milligan Decl. ¶¶ 11, 16-17, 19; Schlorff Decl. ¶¶ 7, 9, 10, 21, 22, 24, 25, 27.  These statements were not relied on by the Court in resolving the instant motions because they are inadmissible as not based on personal knowledge; the conclusions regarding the '157 Patent are also legal in nature and are thus not facts.  The corporate defendants argued that even considering the statements to which they objected, no genuine issue for trial remained.

The enumeration of facts below is limited to those that were relied upon in the parties' briefing, supported by reference to the record, and material to the Court's resolution of the instant motions.[3]

---

[3] The Court's discussion in Section III is limited to the "gist of the action" doctrine, the trade secret misappropriation claim against Dale Walters, the correction-of-inventorship claim, the merits of the fraudulent concealment claim against the corporate defendants, and issues raised under the Pennsylvania Uniform Trade Secrets Act.  The Court does not address the other grounds raised by the defendants, including statute of limitations arguments and claims that Pennsylvania law does not support a cause of action for conversion of intangible property. The recitation of undisputed facts is therefore limited.

A.   <u>Omni Therm and Nova Design</u>

Omni Therm, Inc. was a Missouri corporation founded by Dale Walters in 1987 that developed and sold medical supplies, including infant heel warmer heat packs.  Companies manufacturing heat packs used a variety of methods to drop particulate matter into solution, triggering a "phase change" reaction and generating heat.  For example, a company named Baxter used a "bag-in-a-bag" trigger that triggered a reaction when the internal bag was punctured.  Dep. of Jason Maxwell on behalf of Cardinal Health, Inc., Nov. 10, 2011 at 15:1-3, Pl.'s Ex. G.  Starting in around 1993, Omni sold an infant heel warmer using a "pinch and rub" trigger design patented by Dale Walters, consisting of a bag containing a supercooled sodium acetate solution and a metal disc trigger with prongs that punctured the bag to activate the warmer.  D. Walters Dep. 20-22, Ind. Defs.' Ex. F; Patent No. 5,305,733 ("'733 Patent"), Pl.'s Ex. O at GHG0303.

Dale and Janet Walters resigned as officers and directors of Omni on August 22, 1995.  On December 30, 1999, they turned over all of the shares they owned to Matthew Walters, leaving Matthew as the sole shareholder, director, and officer of Omni Therm.  M. Walters Dep. Nov. 1, 2011 at 10:23-25, 11:1-4, Ind. Defs.' Mot. Ex. A; Ind. Defs.' Mot. Ex. B at WALTERS000033-41.  Dale was no longer involved as an owner or officer of Omni

after that point.[4]  M. Walters Dep. 36-37; Pl.'s Ex. X at
ND000227-28.   Brian Guerra worked for Omni between 1995 and
2006, and has referred to himself as its Vice President of Sales.
Guerra Dep. Oct. 13, 2011 at 73, 296, Pl.'s Ex. H; Lordo Dep.
Nov. 9, 2011, at 21:11-25, Pl.'s Ex. P.

Nova Design Technologies, Ltd., is a Pennsylvania
corporation that is the general partner of Nova Design Partners,
L.P.  It was founded in 1990 by Andrew Milligan, and in 1991,
Jaime Schlorff began to work there.  Decl. of Andrew J. Milligan
¶ 2, Pl.'s Ex. A; Decl. of Jaime Schlorff ¶ 2, Pl.'s Ex. E.
Milligan later developed a nonmetallic "ceramic bead" heat pack
trigger for which he received a patent on January 4, 1994.  U.S.
Patent No. 5,275,156, Pl.'s Ex. X at ND00024.

On December 29, 2010, Schlorff executed a "confirmatory
assignment" of any rights she possessed in sandpaper triggers,
including any patent rights, to Nova.  Pl.'s Ex. X at ND00144.


B.   Nova and Omni Interaction

Nova invested significantly in its trigger technology,
marketed it to manufacturers, and entered agreements protecting
its confidential information with several firms it approached.

---

[4] After leaving the company, Dale periodically discussed
Omni's business with Matthew, and made several interest-free
loans to Omni totaling several hundred thousand dollars.  M.
Walters Dep. 46-47, 56-57, Pl.'s Ex. N; D. Walters Dep., 91:13-
23, Pl.'s Ex. J.

See Schlorff Dep. Oct. 25, 2011 at 85, Pl.'s Ex. C; Joint Development and License Agreement, Pl.'s Ex. X at ND00346.

Nova entered a Confidential Disclosure Agreement ("CDA") with Omni to facilitate evaluation of certain confidential information possessed by Nova, which Matthew Walters executed on Omni's behalf on October 13, 1998.  Pl.'s Ex. X at ND00001.  The CDA states that Nova possessed confidential information "relating to Heat Storage Devices," and that it would disclose as much of that information as necessary for Omni Therm to evaluate it.  Although the CDA does not describe the confidential information that it covers, the Court will assume for purposes of the instant motions that it covers sandpaper trigger technology.  The CDA contains a clause providing that relations between the parties shall be governed by Pennsylvania law.  Id.

On November 20, 1998, Schlorff sent samples of a sandpaper trigger to Matthew Walters for evaluation, which was the first time Nova sent Omni any aluminum oxide sandpaper trigger.  In the letter, Schlorff stated that the trigger samples sent should be allowed to soak in a sodium acetate solution for twenty-four hours "for best results."  Letter from Jaime Schlorff to Matthew Walters, Nov. 20, 1998, Ind. Defs.' Ex. P at ND00006.  Schlorff's notes of a phone call between with Brian Guerra on October 5, 2000 state that Omni "[w]ould like to license [Nova's]

patent for exclusive [use] in [the] infant heel warmer market." Schlorff Notes of Tel. Conf. Oct. 5, 2000, Pl.'s Supp. Ex. X at ND00014-15.

On October 19, 2000, Omni sent Nova a purchase order for 2,000,000 "triggering mechanisms."  Pl.'s Ex. R at WALTERS000122.  Schlorff's notes state that on November 30, 2000, Matthew Walters called to say that Omni was experiencing "problems getting triggers to drop in . . . [the] machine" used in manufacture, and notes of a later call on December 12, 2000 state that Omni was "still having problems with [the] machine." Notes of a May 9, 2001 call state that the "[m]achine [was] not working smoothly yet."  Pl.'s Ex. X at ND00022.  On June 21, 2001, Omni's corporate counsel contacted Nova and stated that the October 19 purchase order "was canceled shortly after it was made," and that Omni had "no intention of purchasing any triggering devices" from Nova.  Letter from Jonathan Fortman to Andrew Milligan, Pl.'s Ex. X at ND00315.

A dispute exists over whether, prior to the signing of the CDA, Milligan and Schlorff met in person with Omni to receive a tour of its facilities from Dale Walters at the urging of another heat pack manufacturer.  Milligan and Schlorff were unclear as to when such a trip took place.  Milligan testified that such a trip occurred in 1998, or possibly 1995.  Milligan Dep. 131-32, 259-60, Ind. Defs.' Ex. M.  Schlorff testified that

the trip occurred in 1998, or 1995 (after consulting with Milligan).  Schlorff Dep. at 107-08, Ind. Defs.' Ex. N.  Schlorff has no "specific recollection of ever speaking to Dale Walters" other than during that visit.  Id. at 55:21-56:15, Ind. Defs.' Ex. Z.  Milligan has not seen any communications between Dale Walters and Nova.  Milligan Dep. at 281-82, Ind. Defs.' Ex. Y. For purposes of the instant motions whether the meeting took place is immaterial to the Court's disposition, because it is undisputed that no confidential information was ever communicated to Dale Walters while he stood in a position of trust and confidence with the plaintiff.

　　　　C.　The '157 Patent

　　　　On March 16, 2001, Matthew Walters filed a provisional patent application entitled "Trigger to Activate a Supercooled Aqueous Salt Solution for Use in a Heat Pack."  U.S. Provisional Application No. 60/276,295, Pl.'s Ex. X at ND00030.  The application describes a trigger "typically made from sand paper." Id. at ND00031 ll. 21-25.  On November 20, 2001, Walters filed a patent application for substantially the same invention, in which the same figures, claims, and specifications appear, and which asserts priority over the '295 application.  U.S. Patent Application No. 09/989,591, Pl.'s Ex. X at ND00043.  A nonpublication request was filed with the Patent Office with

respect to the '591 Application.  Ind. Defs.' Resp. to Pl.'s Req. to Admit No. 81, Pl.'s Ex. S.

Matthew Walters was issued the '157 Patent on April 12, 2005.  Pl.'s Ex. X at ND 00089.  It contains 18 claims, each of which describes the use of a "sandpaper" trigger.[5]

D.    Subsequent Infant Heel Warmer Sales

On May 15, 2006, Omni and CMV signed an Asset Purchase Agreement, Matthew Walters assigned the '157 Patent to Children's Medical Ventures, and Omni warranted that title to the patent was marketable.  Brian Guerra was hired by Children's Medical Ventures as part of that agreement.  Pl.'s Ex. Q at CHMV00001-CHMV00058 & §§ 4.6.1, 4.8.  CMV has been selling "Heel Hugger" or "Heel Snuggler" branded infant heel warmers since 2001, but did not manufacture heel warmers or heat packs before May 15, 2006; before that date, the heel warmers sold by CMV were manufactured by Omni.  During that period, CMV approved marketing literature for heel warmers including the language "patent pending" and "[p]atented button activator eliminates risk of bag puncture," which referred to a patent of CMV's Research and Development director and to the '733 Patent for a "pinch and rub" trigger invented by Dale Walters, respectively.  Decl. of Paul Daly at

_____

[5] The Court merely describes the face of the '157 Patent and does not engage in claim construction at this point in the proceedings.

¶ 4, Corp. Defs. Trade Secret Mot. Ex. 25; Corp. Defs.' Resp. to Pl.'s Second Set of Interrogatories at 1-2, Defs.' Concealment Mot. Ex. 10.

No corporate defendant was aware of Nova, Schlorff, or the CDA prior to the filing of the instant suit. Corp. Defs.' Supp. Resp. to Pl.'s First Set of Interrogatories, Corp. Defs.' Trade Secret Mot. Ex. 3 at 4-6; Dep. of William Thompson on behalf of CMV ("Thompson Dep.") at 122-27, 226-28, 231-32, Corp. Defs.' Conversion Mot. Ex. 3. Corp. Defs.' Resp. to Pl.'s Interrogatories, Corp. Defs.' Conversion Mot. Ex. 1 at 12. No individual defendant spoke with a corporate defendant regarding the CDA, and Matthew Walters did not provide a copy of the CDA to CMV or leave it in his files upon the sale of Omni's assets. Ind. Defs.' Resp. to Pl.'s Req. to Admit 90, Pl.'s Ex. S; M. Walters Dep. 197-207, 223, Corp. Defs.' Trade Secret Mot. Ex. 6.

III. <u>Discussion</u>[6]

        Both groups of defendants moved for summary judgment on

a variety of grounds.  The individual defendants argued that the

tort claims against them were time-barred, unsupported by the

record, inadequate as a matter of law, or barred by the gist of

the action doctrine.  Only the gist of the action doctrine is

discussed with respect to Matthew Walters and Brian Guerra

because it operates to bar all tort claims against them.  The

trade secret misappropriation claim against Dale Walters is

discussed separately.[7]  The corporate defendants argued that the

evidence in the record on summary judgment could not state a

prima facie case under any of their tort theories, and that the

trade secret misappropriation claim was time-barred.

        The Court finds that the tort claims against the

defendants are preempted by statute or properly brought in

---

        [6] A party is entitled to summary judgment if there "is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).
The moving party bears the initial burden of demonstrating the
absence of any genuine issue of material fact, which may be
satisfied by demonstrating the party who bears the burden of
proof lacks evidence to support his case.  <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 323 (1986).  The court must consider the
evidence in a light most favorable to the nonmoving party.  Once
a properly supported motion for summary judgment is made, the
burden of production shifts to the nonmoving party, who must set
forth specific facts showing that there is a genuine issue for
trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250
(1986).

        [7] The plaintiff withdrew the other tort claims it had
brought against Dale Walters, as discussed later.

contract, and that the plaintiff has not presented evidence supporting all of the elements of its trade secret misappropriation claims against Dale Walters or the corporate defendants.  Because it so finds, the Court need not reach statute of limitations issues or other arguments raised by the defendants on many of the claims.  The Court finds, however, that the correction-of-inventorship claim survives summary judgment and will require further discovery and briefing.

     A.   <u>Individual Defendants</u>

     The plaintiff has withdrawn a number of claims that it had brought against Dale Walters and Brian Guerra.  Nova has withdrawn Counts II, III, and IV as against Dale Walters.  Pl.'s Opp. 20; Tr. Hr'g 5/9/12 at 84.  It has also withdrawn Count IV as against Guerra.  <u>Id.</u> at 88.  Finally, the plaintiff concedes that its correction-of-inventorship claim in Count VI is properly directed at Matthew Walters, who is the named inventor in the '157 Patent.  <u>Id.</u> at 84-85.  The remaining claims against the individual defendants are thus: (1) Count II, against Matthew Walters; (2) Count III, against Guerra and Matthew Walters; (3) Count IV, against Matthew Walters; (4) Count V, against all individual defendants; and (5) Count VI, against Matthew Walters.

     The individual defendants argue that the tort claims against them are meritless, time-barred, and cannot proceed under

-14-

Pennsylvania law according to the "gist of the action" doctrine.
They also argue that Nova lacks standing to bring its correction
of inventorship claim, and that it is meritless.  The Court
concludes that the gist of the action doctrine bars the tort
claims brought against Brian Guerra and Matthew Walters, and that
Nova has not presented evidence to support a trade secret
misappropriation claim against Dale Walters.  Genuine issues of
material fact exist, however, with respect to Count VI, which
Nova has standing to bring.

  1. <u>Gist of the Action Doctrine</u>

   The gist of the action doctrine "is designed to
maintain the conceptual distinction between breach of contract
claims and tort claims."  <u>eToll, Inc. v. Elias/Savion Adver.,
Inc.</u>, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (citing <u>Bash v. Bell
Tel. Co.</u>, 601 A.2d 825, 829 (Pa. Super. Ct. 1992)).  "As a
practical matter, the doctrine precludes plaintiffs from re-
casting ordinary breach of contract claims into tort claims."
The rationale behind the doctrine is that recovery in tort for
breaches of duties imposed by mutual consent, rather than "as a
matter of social policy," would "erode the usual rules of
contractual recovery."  <u>Id.</u>  Thus, one party to a contract may
not sue the other in tort if the duties underpinning the tort
claim arose merely because the parties agreed to them.

   The doctrine will not bar a tort claim, however, where

the wrongs alleged do not arise out of duties imposed by the
contract.  For example, in spite of a confidentiality agreement
between the plaintiff and the alleged tortfeasor, a tort claim
may proceed if the plaintiff alleges wrongful disclosures of
information not covered by the agreement.  See Bohler-Uddeholm
Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103-04 (3d Cir.
2001).  In Bohler-Uddeholm, the appellant challenged the district
court's decision to permit a claim for trade secret
misappropriation to go to a jury and argued that such a decision
was barred by the gist of the action doctrine.  The parties had
an agreement that in one section barred appropriation of the
appellee's "know-how," and the court held that "if the jury's
verdict . . . on the misappropriation of trade secrets and
confidential information claim was based on Ellwood's
misappropriation of Uddeholm's know-how, the verdict cannot
stand."  Id. at 106.  The court concluded that

> even if Ellwood's use and misuse of
> Uddeholm's know-how was covered by the
> Agreement, Ellwood's misappropriation of
> Uddeholm's client list, pricing information,
> ship-to lists and customer profile was
> sufficient to sustain the verdict of
> misappropriation, since that information is
> confidential information and/or a trade
> secret but is not covered by the Know-How
> Agreement.

Id. at 107 (emphasis in original).  Similarly, the doctrine will
not bar a tort claim if the parties have a contract but the
wrongs alleged are collateral to, and not "intertwined with" the

contract, such as a fraud-in-the-inducement claim.  E.g., eToll, 811 A.2d at 14 ("Although mere non-performance of a contract does not constitute a fraud, it is possible that a breach of contract also gives rise to an actionable tort.  To be construed as a tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral.") (citing Bash, 601 A.2d at 829) (emphasis added).

Unlike the examples above, all of the breaches alleged here relate to information covered by, and duties arising from, the CDA.  What is fundamentally alleged by the plaintiffs--the "gist" of their action--is that Walters and Guerra violated the confidentiality obligations imposed upon them by the CDA.  See also eToll, 811 A.2d at 19 (alleged frauds "concerning the performance of contractual duties" are barred).  The plaintiff alleges that those breaches were committed when Walters and Guerra disclosed information covered by the CDA and failed to inform Nova that a patent application had been filed in connection with it.  Those breaches are not "collateral to" the contract, such as where a party misrepresents his intention to perform under a contract at its formation.  See, e.g., Mirizio v. Joseph, 4 A.3d 1073, 1080-85 (Pa. Super. Ct. 2010).  Instead, they arise solely from the duties imposed by the CDA.

The doctrine applies to bar the tort claims against Brian Guerra and Matthew Walters despite the fact that the

-17-

contract is with Omni.  The eToll court dismissed fraud claims brought against the corporate defendant's officers even though the contract creating those duties was between the plaintiff and the corporate defendant, because those individuals were only alleged to have breached duties imposed by their employer's contract with the plaintiff.  eToll, 811 A.2d at 10, 14.

The plaintiff's allegations of fraud on the part of Walters and Guerra relate to the performance of their contractual duties under the CDA.  Nova alleges that (1) the 2000 and 2001 comments to Schlorff regarding Omni's use of sandpaper in manufacturing were fraudulent because Matthew Walters owed a duty to communicate in good faith under the CDA; (2) all of the individual defendants owed a duty to disclose the prosecution and issuance of the '157 Patent because of the CDA; (3) the individual defendants improperly converted the information disclosed to them in confidence under the CDA; and (4) liability for trade secret misappropriation arises from the position of trust and confidence that the CDA established between the Nova and the individual defendants.  Am. Compl. ¶¶ 107-10, 117-19, 125-26, 132-36.  Critically, the duties Nova alleges that Matthew Walters and Brian Guerra breached arise from the CDA alone; the plaintiff identifies no other source for the duties of confidentiality it asserts that any individual defendant owed. The tort claims against them, therefore, are barred.

Pennsylvania courts have similarly concluded that the doctrine bars claims against an individual defendant where the duties that the individual allegedly breached arose from a contract between the plaintiff and that employee's company.[8]  See Atchison Casting Corp. v. Deloitte & Touche, LLP, No. 3193, 2003 WL 1847665, at *3 (Pa. Com. Pl. Mar. 14, 2003) (duties arose out of employer's contract); Flynn Co. v. Peerless Door & Glass, Inc., No. 830, 2002 WL 1018937, at *3 (Pa. Com. Pl. May 15, 2002) (finding that "the contract between plaintiff and defendants . . . created the duties which [the defendant's employee] allegedly breached"); Flynn Co. v. Cytometrics, Inc., No. 2102, 2000 WL 33711055, at *4 (Pa. Com. Pl. Nov. 17, 2000) (breaches alleged by defendant employer's employees were actually breaches of the contract between the parties).

Even if the Pennsylvania Supreme Court's embrace of that principle were uncertain, however, the Court's conclusion is consonant with the Third Circuit's reminder that a federal court should "opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently" in interpreting state law.  Werwinski v.

---

[8] The Third Circuit also has held in an unpublished decision that the doctrine applies in these circumstances.  Williams v. Hilton Grp. PLC, 93 F. App'x 384, 387 (3d Cir. 2004) (stating that the doctrine will "bar[] tort claims against an individual defendant where the contract between the plaintiff and the officer's company created the duties that the individual allegedly breached").

<u>Ford Motor Co.</u>, 286 F.3d 661, 680 (3d Cir. 2002) (in refusing to recognize a fraud exception to economic loss rule, agreeing with the district court's interpretation of an area that had yet to be resolved by the Pennsylvania Supreme Court).

The individual defendants here are not alleged to have entered the contract with no intent to honor it; they are alleged to have breached its terms after a duty to perform arose under it.  The contract is thus central, rather than collateral, to the breaches alleged.  The gist of the action doctrine bars tort actions grounded in those breaches.  The individual defendants' motion will be granted as to Brian Guerra and Matthew Walters on Counts III and V, and as to Matthew Walters on Counts II and IV.

2.    Trade Secret Misappropriation Claim Against Dale Walters

Dale Walters acknowledges that the gist of the action doctrine is not applicable to the tort claims against him because he was neither a signatory to the CDA nor an agent of Omni at the time it was in effect.  Instead, he argues that the plaintiff has not presented sufficient evidence to support a claim for misappropriation of trade secrets.

As a threshold matter, the Court notes that although Pennsylvania has adopted the Uniform Trade Secrets Act ("PUTSA"), this claim is governed by the common law because the alleged acts of misappropriation occurred prior to April 9, 2004, the

effective date of the PUTSA.  2004 Pa. Legis. Serv. Act 2004-14
at § 4 (West).  Prior to the adoption of the PUTSA, Pennsylvania
trade secret followed the Restatement of Torts, which provides
that

> One who discloses or uses another's trade
> secret, without a privilege to do so, is
> liable to the other if:
>
> (a) he discovered the secret by improper
> means, or
>
> (b) his disclosure or use constitutes a
> breach of confidence reposed in him by the
> other in disclosing the secret to him.

Restatement (First) of Torts § 757.  Under the common law,
Pennsylvania "adhere[d] to the 'property' view of trade secret
law. . . . On that view, the theoretical basis for recovery on a
trade secret claim is not merely the breach of a confidential
relationship, but also the adverse use of the plaintiff's
intellectual property."  Den-Tal-Ez, Inc. v. Siemens Capital
Corp., 566 A.2d 1214, 1228 (Pa. Super. Ct. 1989) (citing Van
Prods. Co. v. Gen. Welding & Fabricating Co., 213 A.2d 769 (Pa.
1965)) (internal quotations omitted).

        Nova has presented little evidence that it communicated
at all with Dale Walters.  Schlorff only recalls speaking with
Dale during the tour of Omni facilities prior to the execution of
the CDA, and Milligan has never seen any communications between
Nova and Dale Walters.  Schlorff Dep. at 55-56; Milligan Dep. at
281-82.  Nova merely presents attorney argument, but no evidence,

to suggest that Dale Walters spoke to Nova to set up the CDA.
Pl.'s Opp. to Ind. Defs.' Mot. at 29.  More fatally, Nova has
presented no evidence that Dale Walters learned of Nova's
confidential information while standing in a position of trust
and confidence or that he used Nova's intellectual property
adversely.[9]  Viewed in the light most favorably to Nova, the
record cannot support a trade secret misappropriation claim
against Dale Walters.  Count V also will be dismissed against
him.

### 3.   Correction of Inventorship Claim

The plaintiff also brings a claim for correction of
inventorship (and ownership) against Matthew Walters under the
patent statute, 35 U.S.C. § 256.  Matthew Walters asserts that
this claim should be dismissed because (a) Nova lacks standing to
bring it; and (b) Schlorff's claims as to the invention she owns
are "too broad" to serve as the basis for the claim.

The movants argue that Nova lacks standing to bring a
claim under the statute because it has no interest in the patent.

---

[9] The plaintiff makes a number of assertions with respect to
Dale Walters's involvement with Omni following his formal
withdrawal from the firm, including his appearance on billing
records produced by a law firm working on Omni's behalf.  Pl.'s
Opp. to Ind. Defs.' Mot. 29-30.  The Court can only interpret
this as an assertion that Dale Walters's continued involvement,
if any, with Omni vested him with duties to maintain the
confidentiality of information covered under the CDA with Nova.
If that were so, however, any tort claims against him would be
barred by the gist of the action doctrine, as discussed above.

They argue that the confirmatory assignment of rights between Schlorff and Nova is of no moment and an "unsupported allegation" in light of Milligan's statement that he had not seen the document prior to his deposition.  The Court is satisfied that the document in the record establishes Nova's "concrete financial interest" in the patent, which is sufficient to confer standing.  Larson v. Correct Craft, Inc., 569 F.3d 1319, 1326 (Fed. Cir. 2009).

To succeed on a correction of inventorship claim, a plaintiff must prove that she is the sole or co-inventor of any claim of the patent in issue by showing that she conceived of the invention.  Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1301-03 (Fed. Cir. 2002).  Conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is [t]hereafter to be applied in practice."  Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460.  Schlorff's claim most generally appears to be for a sandpaper trigger for use in heat packs.  Her own testimony is corroborated by handwritten notes regarding Nova's use of a sandpaper trigger and a Nova "checklist" referring to potential materials for use in a heat pack.

The defendants do not argue on the present motion that Schlorff did not conceive of any claim in the '157 Patent, but argue that her assertions "are too broad to establish what she

-23-

has invented."  The defendants argue that she claims inventorship over (a) all aluminum oxide-based triggers, not just sandpaper triggers; (b) only soaked triggers, rather than "dry or partially dry" ones as described in the '157 Patent; and (c) an invention not requiring a resin coating, whereas the '157 Patent refers to a resin coating.  Ind. Defs.' Mot. 35-36.

The first ground is not a proper basis for summary judgment on a Section 256 claim.  The Court does not decide at present whether Schlorff's claims are patentable in the abstract; rather, Nova's claim in Count VI is that Schlorff should be named as the sole inventor or co-inventor of the claims in the '157 Patent, which are limited to what is actually in the patent.  On the second argument, the record contains evidence that Schlorff asserted that soaking was necessary only for "for best results." Finally, the Court notes that the '157 Patent appears to include only three claims involving a resin coating[10]; Nova needs to establish Schlorff's conception only with respect to one claim to maintain this Count.  Trovan, 299 F.3d at 1302.

On its correction of inventorship claim, Nova must prove, by evidence other than the testimony of the purported inventor, that Schlorff was the inventor or co-inventor.  See id.

---

[10] In an abundance of caution, the Court again notes that it does not presently engage in claim construction.  Because it will deny summary judgment on this Count, a briefing schedule and hearing will be set for this purpose.  See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

at 1302 ("To meet the clear and convincing burden of proof,
alleged co-inventors must prove their contribution to the
conception with more than their own testimony respecting the
facts surrounding a claim of derivation or priority of
invention."). Nova has produced sufficient evidence to survive
summary judgment on this claim. Schlorff testified that during a
trip to Home Depot in 1994, she came up with the idea of using
sandpaper as a heat pack trigger. She purchased some sandpaper,
cut it into small pieces, and successfully tested it for use in a
heat pack. She told or showed this to both her husband and
Milligan, and Nova records suggest that the company had
considered using a sandpaper trigger in 1995. Schlorff Dep. Oct.
25, 2011 at 29:11-13, 170-176, Pl.'s Ex. C; Pl.'s Ex. X at
ND00370-73.

Schlorff's testimony is corroborated by Nova documents,
and Nova is capable of meeting its burden of proof on this issue.
See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d
1344, 1350-51 (Fed. Cir. 2001) (contemporaneous documentary
evidence is the "most reliable proof that the inventor's
testimony has been corroborated"). The Court cannot, therefore,
conclude on the record before it that Matthew Walters is entitled
to judgment as a matter of law on Count VI, so this part of the
motion will be denied.

B.   Corporate Defendants

        In this phase of the proceedings, Nova brings Counts III-VI against CMV, Respironics, Inc., and Respironics Novametrix.  Nova argues that by hiring Brian Guerra and by purchasing Omni's assets and the '157 Patent, the corporate defendants participated in or contributed to the fraudulent conduct of the individual defendants.  The corporate defendants move for summary judgment on Counts III-V only.  The Court will grant these motions.

        1.   Fraudulent Concealment or Nondisclosure

        The corporate defendants argue that the plaintiff has not presented evidence sufficient to support a fraudulent concealment or nondisclosure claim.  The Court will grant this motion because the plaintiff has not presented any factual or legal basis on which to conclude that any corporate defendant owed a duty to speak to Nova.

        The plaintiff has alleged that the corporate defendants concealed breaches of the CDA by the individual defendants and furthered those breaches by hiring Brian Guerra.  The plaintiff argues, without factual support, that the corporate defendants concealed sales of infant heel warmers by Omni to CMV in 2000 and 2001 and that, after learning of the CDA between Omni and Nova, they concealed from Nova the existence of the patent applications that Matthew Walters had filed.  Pl.'s Opp. to Corp. Defs.'

Fraudulent Concealment Mot. at 5.

In Pennsylvania, "[c]oncealment can be a sufficient basis for finding that a party engaged in fraudulent conduct, provided that the other requisite elements of fraud are established," but "while concealment may constitute fraud, . . . mere silence is not sufficient in the absence of a duty to speak." Wilson v. Donegal Mut. Ins. Co., 591 A.2d 1310, 1315-16 (Pa. Super. Ct. 1991) (noting Pennsylvania's adoption of the principle in Restatement (Second) of Torts § 551).

The Pennsylvania appellate courts have not explicitly identified the circumstances under which that duty to speak arises. However, applying the fraud-by-omission principle to the doctrine of fraudulent concealment, the United States Court of Appeals for the Third Circuit has held that the duty must arise from "a fiduciary relationship between the parties or a similar relationship of trust and confidence." Mest v. Cabot Corp., 449 F.3d 502, 517 (3d Cir. 2006) (citing Chiarella v. United States, 445 U.S. 222, 227-28 (1980)). Here, Nova presents no evidence of any relationship of trust and confidence existing between it and a corporate defendant. It is undisputed that no corporate defendant was aware, until the filing of the instant suit, either that Nova existed or that Omni had signed a confidentiality agreement with it.

Nova contends that the corporate defendants owed it a

-27-

duty to speak, arguing that by hiring Brian Guerra, CMV inherited a duty to maintain the confidentiality of any information Guerra obtained from Nova.  Pl.'s Opp. to Corp. Defs.' Concealment Mot. 11-12; Tr. Hr'g 21.  However, Pennsylvania courts have not accepted such an "imputation" theory of knowledge from an employee to his employer unless the knowledge was gained in the course of employment and for the benefit of the employer.  See Rochez Bros., Inc. v. Rhoades, 527 F.2d 880, 884 (3d Cir. 1975); cf. Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP, 989 A.2d 313, 316-17 (Pa. 2010) (in certified questions from United States Court of Appeals for the Third Circuit, noting the general rule that a corporation's "knowledge" is derived by its officers through principles of agency law) (citing Gordon v. Continental Cas. Co., 181 A. 574, 577-78 (Pa. 1935)).[11]

_____

[11] At oral argument, the plaintiff asserted that their position was supported by First Health Group Corp. v. National Prescription Administrators, Inc., 155 F. Supp. 2d 194 (M.D. Pa. 2001).  Tr. Hr'g 24.  The First Health court was faced with a motion for a preliminary injunction.  The plaintiff brought a claim of intentional interference with prospective contractual relations because the defendant had hired its former employee and used trade secret information he possessed to help bid on a Pennsylvania state prescription drug program contract.  The court held that the plaintiff was likely to succeed on its claim because it was "undisputed" that the defendant was aware of the confidentiality agreement between the employee and the plaintiff as it had been shown to the defendant in his job interview.  Id. at 233-34.  Thus, the "transfer" of knowledge from the employee to the subsequent employer was made not by imputation, but instead by the information actually being communicated.  Unlike First Health, there is no evidence here that a corporate

In the absence of evidence that the corporate defendants possessed a duty to speak with respect to Nova, the corporate defendants are entitled to judgment as a matter of law on Count III.

### 2.   Conversion

The plaintiff similarly contends that by purchasing the '157 Patent and hiring Brian Guerra, the corporate defendants converted Nova's confidential information.  The defendants argue that any conversion claim is preempted by the PUTSA, which "displaces conflicting tort, restitutionary and other law . . . providing civil remedies for misappropriation of a trade secret," but does not displace those actions not based on trade secret misappropriation.  12 Pa. Cons. Stat. § 5308.  Nova argues that the PUTSA does not apply, or that if it does, its conversion action is not preempted by it.

As noted above, the PUTSA does not apply to acts of conversion (or continuing acts of conversion) occurring prior to its effective date in April 2004.  In opposition to the corporate defendants' motion, the plaintiff argues that "this case involves an act of conversion that started in 2000/2001, and [that] continues to today."  Pl. Opp. to Defs.' Conversion Mot. 10. With respect to the corporate defendants, however, they argue

---

defendant was aware of either the CDA or that Brian Guerra possessed any confidential information belonging to Nova.

that they "have intentionally or unintentionally converted or participated in the conversion of [the individual defendants]," and did so "by purchasing the '157 Patent and hiring Brian Guerra." <u>Id.</u> at 3, 7.  The purchase of the '157 Patent and hiring of Brian Guerra indisputably took place in May 2006, and so the PUTSA applies.[12]

The plaintiff argues that its conversion claim is not displaced by the PUTSA because courts in this district have "held that the PUTSA does not preempt common law tort claims (at this stage in litigation) when it has yet to be determined whether the information at issue constitutes a trade secret." <u>Id.</u> at 10.[13]

The PUTSA defines a trade secret as

> [i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or

---

[12] Nor can the plaintiff ground its argument in an imputation to the corporate defendants of Brian Guerra's knowledge, as discussed above.

[13] <u>Citing</u> <u>EXL Labs., LLC v. Egolf</u>, No. 10-6282, 2011 WL 880453, at *3 (E.D. Pa. Mar. 11, 2011) (finding that the plaintiff had premised its claims on theft of trade secrets and "other confidential information"); <u>Cenveo Corp. v. Slater</u>, No. 06-2632, 2007 WL 527720, at *3 (E.D. Pa. Feb. 12, 2007) (reviewing cases both finding and not finding preemption at the motion-to-dismiss stage and adopting the reasoning of <u>Stone Castle Fin'l, Inc. v. Friedman, Billings, Ramsey & Co., Inc.</u>, 191 F. Supp. 2d 652, 658-59 (E.D. Va. 2002)); <u>Roger Dubois North Am., Inc. v. Thomas</u>, No. 05-2566, 2006 WL 2645149, at *3-4 (M.D. Pa. Sept. 14, 2006) (refusing to dismiss on preemption grounds because the plaintiff's allegations were "not based solely on misappropriation of trade secrets").  These decisions were issued in response to motions to dismiss, not after a factual record had been developed, as here.

process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. Cons. Stat. § 5302.

The plaintiff's allegations are that the information converted was its sandpaper trigger technology, specifically, the use of aluminum oxide sandpaper in a heat pack.  Nova has asserted that the technology confers an advantage over prior methods, and that it engaged in efforts to maintain the information as confidential, including through the execution of confidentiality agreements with competitors.  Nova Stmt. Facts ¶¶ 10-11.  Viewing the record evidence on this issue in the light most favorable to the plaintiff, that information was substantially secret and of value to its owner, and therefore a trade secret.  See Pestco, Inc. v. Associated Prods., Inc., 880 A.2d 700, 706 (Pa. Super. Ct. 2005) ("The crucial indicia for determining whether certain information constitutes a trade secret are substantial secrecy and competitive value to the owner.").  Nova has not alleged that any other information it

possessed was taken by any defendant.[14]  Pennsylvania law makes
clear that such a claim must be brought under the trade secret
statute, which the Court now addresses.

### 3.   Trade Secret Misappropriation

The plaintiff also alleges that the purchase of the
'157 Patent and the hiring of Brian Guerra by the corporate
defendants constitute acts that render them liable for trade
secret misappropriation under Pennsylvania law.  The corporate
defendants argue that any such claim is time-barred under the
PUTSA[15] and is meritless.  The Court will grant this motion
because the record contains no evidence that a corporate
defendant was aware that any information it allegedly

---

[14] Nova asserts that "certain information protected by
agreement [can be] . . . considered by a business to be
confidential, while not necessarily qualifying as trade secrets."
Pl.'s Opp. to Corp. Defs.' Conversion Mot. 9 (quoting Iron Age
Corp. v. Dvorak, 880 A.2d 657 (Pa. Super. 2005)).  Nova does not
identify which information it asserts was confidential and
converted but not a trade secret.

[15] As discussed above the PUTSA applies because the alleged
misappropriation occurred after its effective date.  Nova implies
in opposition to the corporate defendants' trade secret
misappropriation motion that several events occurring prior to
2004 might serve as the basis for this claim.  See Pl.'s Opp. 3
(stating that "the misappropriate [sic] first occurred and
continued to occur through the following events" occurring
between December 2000 and May 2006); id. 14-15.  However, the
plaintiff has not put forth evidence of any act by the corporate
defendants serving as the basis for this claim other than the
purchase of the '157 Patent and Omni assets and the hiring of
Brian Guerra.

misappropriated was improperly obtained.

> Under the PUTSA,
>
> [m]isappropriation [i]ncludes:
>
> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>
>>> (A) derived from or through a person who had utilized improper means to acquire it;
>>>
>>> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

12 Pa. Cons. Stat. § 5302.

The movants have produced evidence that Omni warranted good title to the '157 Patent, and that no corporate defendant was aware of the CDA or any other interactions between Omni and

Nova prior to this suit.  This evidence is undisputed.  The
plaintiff argues that CMV's approval of marketing literature
referring to several patents, and the hiring of Brian Guerra,
demonstrate that the corporate defendants knew or had reason to
know that the sandpaper trigger technology may have been acquired
by improper means.  The Court has discussed how Guerra's
knowledge cannot be imputed to the corporate defendants.[16]

In one paragraph of her declaration, Schlorff states
that she believed that certain marketing literature produced by
CMV "shows a photo shopped (i.e., cut & paste) 'Pinch & Rub'
trigger on a HEEL HUGGER I[nfant] H[eel] W[armer]."  Schlorff
Decl. ¶ 14, Pl.'s Ex. E.  This point is argued with respect to
the corporate defendants' knowledge regarding Nova's confidential
information.  The corporate defendants argue that this is
speculative and lacks foundation, rendering it inadmissible lay
opinion testimony under Fed. R. Evid. 701.  Under the Court's
analysis, it does not raise a genuine dispute on the fact that no
corporate defendant was aware of Nova or the agreement it had
with Omni prior to CMV's purchase of Omni assets in 2006.  No

---

[16] At oral argument Nova's counsel suggested that the Court
should infer that the corporate defendants had reason to know
that information was obtained by improper means because they were
"fully aware that [the '157 Patent] could be invalid when they[
were] acquiring it, and conduct[ed] a reckless and wanton due
diligence review . . . ."  Tr. Hr'g 37.  The Court need not
address this as a basis for liability under the PUTSA because
there is no evidence of this either.

reasonable juror could conclude that Schlorff's opinion regarding the appearance of CMV's marketing literature demonstrates that CMV was aware of any confidentiality obligations between Omni and Nova.

None of the other evidence the plaintiff offers raises a genuine issue of fact as to whether the defendants knew or had reason to know that any trade secret had been acquired by improper means.  In the absence of such evidence, the corporate defendants are entitled to summary judgment on Count V.

Among the claims in the first phase of these bifurcated proceedings, the correction-of-inventorship claim remains outstanding as against Matthew Walters and the corporate defendants.  The Court will solicit proposed discovery, briefing, and hearing schedules from the parties on that issue.

An appropriate order shall issue separately.